JAMES V. BEQUILLARD v. EDWARD L. BARTLETT.

1. DEMURRER TO EVIDENCE; *Conflict of Testimony; Question for Jury.*
Upon a demurrer to the evidence, the court must presume that all the
evidence demurred to, and upon which the party resisting the demurrer
relies, is true, except in cases where evidence of a weaker kind is con-
tradicted by evidence of a higher kind, and where the court could say
as a matter of law that the weaker evidence should not be considered at
all, but should be excluded. A court cannot upon a demurrer weigh
conflicting evidence. That is the province of the jury.

2. EXEMPTION; *Merchandise.* Articles of merchandise bought by a mer-
chant to be sold again on speculation, are not exempt in his hands from
attachment and execution under the eighth subdivision of section 3 of
the exemption law.

3. ———— *"Tools and Implements" of Tradesmen.* A lamp and other
articles kept by a watchmaker and jeweler, would be exempt from attach-
ment and execution under said exemption law as "tools and imple-
ments," provided such articles were necessary for his use in carrying on
the business of making and repairing watches and jewelry.

4. ———— *"Stock in Trade"; Raw Materials; Manufactured Articles.*
Watches and jewelry manufactured by a watchmaker and jeweler,
whether manufactured for particular customers upon special orders, or
for customers generally and for sale to any person who might wish to
purchase, whether completed or not completed, as well as the raw ma-
terials kept by such watchmaker and jeweler from which to manufacture
watches and jewelry, are, in the hands of such watchmaker and jeweler,
exempt from attachment and execution, as "stock in trade" under said
exemption law, provided, that the aggregate amount in value of the
articles exempted as "stock in trade" does not exceed four hundred
dollars.

*Error from Wyandotte District Court.*

ACTION by *Bequillard* to recover from *Bartlett* $458.50,
the value of certain personal property alleged to have been
unlawfully taken by *Bartlett* and converted to his own use.
*Bartlett* claimed the property as assignee in virtue of an assignment made to him for the benefit of *Bequillard's* creditors,
while *Bequillard* claimed that said property was exempt to
him under the exemption laws of Kansas. The principal
facts and proceedings are fully stated in the opinion, *infra.*

The property in dispute consisted of one glass show-case, one show-case with mirror, one iron frame for show-case, two tables, and one lamp, valued together at $58.50, claimed by *Bequillard* as tools and implements necessary for carrying-on his business as a watchmaker and jeweler; also, as "stock in trade," the following—one blood-stone seal ring, two onyx rings, one plain enameled ring, one pearl ring, four plain gold rings, two plain silver rings, two carved silver rings, twenty engraved silver rings, (all finished,) two half-set crosses, gold mounted, one unfinished blood-stone seal ring, and one unfinished ring with clamps, of the aggregate value of $128.50, (which *Bequillard* claimed as having been manufactured by him,) and two gold watches, two silver watches, two gold chains, twelve dessert spoons, six silver forks, six table spoons, one alarm clock, and one rosewood-case clock, of the aggregate value of $271.50, which he had purchased for purposes of resale. Trial at September Term 1874 of the district court. Upon demurrer to the evidence, judgment was given in favor of defendant *Bartlett*, and *Bequillard* brings the case here on error.

*D. B. Hadley*, for plaintiff.

*J. B. Scroggs*, and *E. L. Bartlett*, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: James V. Bequillard, (plaintiff in error and plaintiff below,) being involved in debt, executed a deed of assignment for the benefit of his creditors conveying to Edward L. Bartlett (defendant in error and defendant below,) all his property, "excepting nevertheless from the operation of" such "conveyance all such goods, chattels, stock in trade, wearing apparel, household furniture, and all other property and things legally exempt from levy and sale on attachment or execution by the laws of the state of Kansas." Bartlett immediately took possession of all the property which he supposed was transferred to him by virtue of said deed of assignment; but the plaintiff claims that he took possession

of more of his (plaintiff's) property than was so transferred. Whether he did or not, is the only question in this case. The plaintiff's action was for the value of the property claimed to have been taken wrongfully by the defendant. A trial was commenced before the court below and a jury. After the plaintiff had introduced his evidence, and rested, the defendant demurred to the evidence. The court below sustained the demurrer, took the case from the jury, and then rendered judgment in favor of the defendant and against the plaintiff for costs. The plaintiff now brings the case to this court for review. He claims that by the terms of said deed of assignment he reserved to himself all goods that were exempt by law from attachment and execution, and that the goods for 1. Demurrer to evidence. which he sued in this action were so exempt. Whether they were so exempt or not, was the main question to be tried; but as the case comes to us, the question is not, whether said goods were absolutely exempt or not, but it is merely whether there was sufficient evidence to show *prima facie* that any of said goods were exempt. For, in all cases upon a demurrer to the evidence, the court (district, or supreme,) must presume that all the evidence demurred to, and upon which the party resisting the demurrer relies, was and is true, except in cases where evidence of a weaker kind is contradicted by evidence of a higher kind, and where the court could say as a matter of law, that the weaker evidence should not be considered at all but should be excluded. A court cannot upon a demurrer weigh conflicting evidence. That is the province of the jury. Therefore, if the evidence in this case showed *prima facie* that any one of the articles claimed by the plaintiff was exempt, the court below erred in sustaining said demurrer, and its judgment would in such a case have to be reversed.

The goods in controversy might be divided into three classes, as follows: first, the tools and implements by which plain- 2. Exemption of property. tiff carried on his trade or business; second, the goods which he himself manufactured to sell; third, the goods which he purchased of others to sell. All

of these goods, the plaintiff claims, were exempt from attachment and execution, under the following statute, to-wit:

"Every person residing in this state, and being the head of a family, shall have exempt from seizure and sale upon any attachment, execution, or other process issued from any court in this state, the following articles of personal property: * * * *Eighth*, The necessary tools and implements of any mechanic, miner, or other person, used and kept for the purpose of carrying on his trade or business, and, in addition thereto, stock in trade not exceeding four hundred dollars in value."—(Gen. Stat. 473, 474, § 3.)

The evidence showed that the plaintiff resided in Wyandotte, Kansas; that he was the head of a family; that he was a watch-maker and jeweler by trade, and that he carried on the business in Wyandotte, Kansas, of making and repairing watches and jewelry, and of buying and selling watches and jewelry. This business was all carried on in one room. That is, the plaintiff made, repaired, and sold said watches and jewelry all in the same room. He kept one lamp to light this room, two show-cases in which to show and display his watches and jewelry, two tables on which to support the show-cases, and one iron frame to protect one of said show-cases. These articles were all used in the plaintiff's business, and were so used with respect to the goods manufactured by the plaintiff himself, as well as to those purchased of others. The defendant took all these articles from the plaintiff. The defendant also took thirty-seven articles of jewelry manufactured by the plaintiff himself for the purpose of sale, and kept by him for that purpose. Several of these thirty-seven articles were not fully completed when the defendant took them, but the most of them were. The defendant also took a large number of other articles of jewelry purchased by the plaintiff for sale, and kept by him for that purpose. The plaintiff claims that all of the foregoing articles, the lamp, the show-cases, the tables, the iron frame, and the jewelry, were exempt from attachment and execution, and therefore that they were all reserved to him by said deed of assignment, and therefore

that the defendant had no right to take them. It will be noticed from the foregoing facts that the plaintiff was both a manufacturer and a merchant. As a *merchant*

No exemption
in favor of
merchant.

merely, we do not think that the plaintiff could hold any of said articles as exempt from attachment or execution. (*Guptil v. McFee*, 9 Kas. 30; *Grimes v. Bryne*, 2 Minn. 90.) Therefore, all of said articles which the plaintiff purchased and kept for sale merely for speculation, were not exempt from attachment or execution, for he held them merely in the character of a merchant. And if said show-cases, etc., were necessary to the plaintiff's business only in his character as a merchant, then we would think that they also were not exempt. If however they were necessary for the plaintiff's business in his character as a manu-

3. Exemption
in favor of
manufacturer,
mechanic, etc.

facturer, then we would think that they were exempt as "tools and implements." From the evidence in the case it would seem that the lamp at least was necessary for the plaintiff's business as a manufacturer. Possibly some of the other articles may also have been necessary to him as a manufacturer. And as it would seem from the evidence that one at least ( and perhaps more ) of said articles was necessary for the plaintiff's business as a manufacturer, the question of whether it was so necessary or not should have been submitted to the jury. We also think that said thirty-seven articles of jewelry manufactured by

4. Stock in
trade: what
it includes.

the plaintiff himself were exempt as "stock in trade." (*Stewart v. Welton*, 32 Mich. 56.) Some of them were completed and some of them were not. Evidently those not completed were exempt. But we would think that the others were also exempt. The exemption laws are to be liberally construed so as to effect the humane purpose designed by the legislature in enacting them. If it were held that the raw material in the hands of a mechanic or tradesman was exempt, but that the goods manufactured out of such raw material and kept by such mechanic or tradesman for sale were not exempt, it would be to discourage such mechanic or tradesman from using his

time and skill in manufacturing his raw materials into goods for the purpose of selling them. This would be a violation of the spirit of this particular provision of the exemption laws. One of the objects of the exemption laws in exempting the tools and implements of a mechanic, miner, etc., and in exempting a certain amount of his stock in trade, is, to encourage him to be industrious so that he may earn a livelihood for himself and family; but if, when he uses his tools and implements, and such of his stock in trade as consists of raw materials, in manufacturing goods, these goods may be immediately seized on attachment or execution, he would not be encouraged in using his tools and implements and such stock in trade in manufacturing goods. Such a construction of the exemption laws would tend to encourage idleness instead of industry. A mechanic would not like to so use his raw material as to lose both it and his labor. The words, "stock in trade," we think, are broad enough to cover, not only the raw materials from which the mechanic intends to manufacture goods, but also to cover the manufactured goods themselves; and they are also broad enough to cover not only goods manufactured for particular customers upon special orders, but also to cover goods manufactured for sale to customers generally, or to any person who might afterward choose to purchase. Some mechanics or tradesmen, like tailors, manufacture nearly all their goods upon special orders, while others, like miners of coal, (and the statute specially mentions "miners,") prepare their goods for customers generally, and without reference to special orders, or to whom any specific articles shall go. Now we would suppose that the coal procured by a miner for customers generally would be equally exempt with the coat made by a tailor for a particular customer. The amount exempted as "stock in trade," is of course limited; and if the mechanic, miner, or tradesman, takes a portion of it in manufactured goods he cannot of course take so much of it in raw material. In the aggregate the value of the articles, manufactured and unmanufac-

tured exempted, as "stock in trade," cannot exceed four hundred dollars.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.