SCHUSTER, HINGSTON & CO. v. FRED. H. KURTZ *et al.*

CONVEYANCE—*Fraud*—*Evidence.* In an action to set aside a convey-
ance on the ground of fraud, proof was offered tending to show that
the conveyance was executed when the grantor, a merchant, was finan-
cially embarrassed and practically insolvent, to his clerk, who had no
money with which to pay for the property, and who gave an unsecured
promissory note for the entire consideration; also, that there was an
agreement between them to say to any inquirers that the considera-
tion was the promissory note and $500 additional, which the grantor
was owing the grantee, when, in fact, no such indebtedness existed.
Testimony was also offered to show that the grantee had been in the
employment of the grantor for about a year, and had opportunity to
know the condition of his business, and that he purchased the land
without examining its quality or the condition of the title thereto.
A demurrer was interposed to the testimony of the plaintiff; and it
is *held*, that the evidence, measured by the rule applicable when a de-
murrer is filed thereto, warranted the inference that the conveyance
was voluntary, and made with the intent of both grantor and grantee
to hinder and delay the creditors of the former, and that it was suffi-
cient to resist the demurrer which was interposed.

*Error from Lane District Court.*

THE facts appear in the opinion.    Judgment for the defend-
ants, *Kurtz* and two others, at the October term, 1888.    The
plaintiffs, *Schuster, Hingston & Co.*, bring the case here.

*Lancaster, Hall & Pike, Geo. S. Redd*, and *T. J. Womack*,
for plaintiffs in error.

*C. D. Pillsbury*, and *C. E. Lobdell*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: On December 24, 1887, Fred. H. Kurtz, a
clothing merchant at Dighton, made an assignment.    Prior to
that time he had purchased large quantities of goods on credit,
and the credits having expired, the creditors had for some time
been pressing him for payment of their claims.    He owed
Schuster, Hingston & Co., one of the creditors, about $4,000,
and they instituted an attachment suit against Kurtz, and

caused a levy to be made on a quarter-section of land in Lane county, as the property of Kurtz. This action resulted in a judgment in favor of Schuster, Hingston & Co., for about $4,200. A few days prior to the assignment; Kurtz had executed a conveyance purporting to convey to Z. J. Anthoni the land mentioned, which was afterward attached at the instance of Schuster, Hingston & Co. Anthoni was a young man who had been employed as a clerk by Kurtz for about a year prior to that time at a small salary. Schuster, Hingston & Co. brought this action to set aside the deed as fraudulent and void, and to subject the land to the payment of their judgment against Kurtz.

. After the plaintiffs had introduced their evidence, a demurrer to the same was interposed by the defendant and sustained by the court; and this ruling is assigned for error. Upon that demurrer, the question before the court was not what portion of the conflicting evidence introduced was the most credible, nor how the conflict should be determined, but it was rather, whether, taking as true every part of the evidence which tended to prove plaintiffs' claim, did it make out a *prima facie* case in their favor? All reasonable inferences and presumptions should have been resolved in favor of the plaintiffs, as the demurrer admitted every fact and conclusion which the evidence most favorable to the plaintiffs tended to prove. (*Bequillard v. Bartlett*, 19 Kas. 382; *Brown v. Railroad Co.*, 31 id. 1; *Wolf v. Washer*, 32 id. 533; *Christie v. Barnes*, 33 id. 317; *Rogers v. Hodgson*, 46 id. 276.) Looking at the testimony offered in that light, we are led to conclude that the demurrer should have been overruled.

Although there was no direct and positive proof of fraudulent motives on the part of Kurtz and Anthoni, there were many facts and circumstances indicating a want of good faith on the part of both. It appears that, a short time before the making of the conveyance in question, Kurtz bought large lots of goods from several creditors on short periods of credit. The claims had become due, and he was unable to pay them. Not only this, but it appears that at the time of the convey-

ance his liabilities exceeded his entire property and assets. Shortly before that time, he had marked down the prices on his goods, and Anthoni had assisted him in doing so. The conveyance was made when he knew he was insolvent, and to Anthoni, who was unable to, and did not, pay him any money. Anthoni gave his note, payable in 30 days, for $1,000, which was alleged to be the agreed consideration, and it does not appear that he had any resources with which to make payment at that time or in the near future. Kurtz was being pressed by his creditors, and was arranging to make an assignment at the time he made the conveyance. The deed was acknowledged on December 20, 1887, and he asked Riley to act as assignee for him, either on the 20th or 21st of the same month. For about a year previous to that time Anthoni was employed by Kurtz at a monthly salary of from $25 to $46; and in the absence of Kurtz he had charge of the store, and must have had considerable knowledge of the condition of the business. When Kurtz proposed to sell the land, Anthoni replied: "I can't buy a setting hen." Notwithstanding this admission, he promised to pay $1,000 within 30 days. After Kurtz had exchanged a deed for Anthoni's $1,000 note, Kurtz told Anthoni to tell anyone who inquired that the consideration was $1,500 instead of $1,000; and further, that Kurtz had borrowed $500 from Anthoni while he was in Kurtz's employment, and that Anthoni had given his note for the balance. No such indebtedness, in fact, existed, and Kurtz was only owing Anthoni at that time about $13, which was due him upon his salary as clerk. As stated, Anthoni did not pay any cash, but gave his mere promise to pay; and it appears that at the time he did not have to exceed $25 or $30 in money, and the only property which he possessed was a little furniture and a small piece of real property which was heavily incumbered. He did not have the ability to meet the $1,000 note, and it was not paid at the time of the trial. He purchased without an examination of the land, or any examination of the records with reference to the condition of the title. If every one of these facts and circumstances is taken in the light most favorable to

Schuster v. Kurtz.

the plaintiffs, it is difficult to reconcile the conduct of Kurtz and Anthoni with honesty of purpose in the transaction. Why did Kurtz, when he was in a failing condition, and in great need of money to satisfy importunate creditors, transfer property to one not able to pay him any money, and who had no prospects that he would be able to pay at the maturity of the promissory note which was taken? Why did he exchange property upon which his creditors had a right to depend, and which would have aided in relieving his financial stress, for an unsecured promissory note? Why did he not even take any security upon the land which he transferred? And, again, why did he advise the grantee to make a false statement as to his being indebted to him in the sum of $500, and as to the consideration paid for the land? These and other matters which have been referred to can possibly be explained and shown to be consistent with honest motives, but they are so indicative of a purpose to hinder, delay and defraud creditors as to require explanation. The circumstances surrounding the case are equally strong against the good faith and fairness of Anthoni. We think that, in the absence of explanatory proof, the court might reasonably infer that the conveyance was voluntary, and that the intent of both grantor and grantee was to hinder and delay the creditors of the former. Measured by the rule which must apply where a demurrer is interposed, the evidence must be held sufficient to resist the demurrer, and hence there must be a reversal of the judgment and a new trial of the cause.

All the Justices concurring.