No. 22,438.

THE ARMSTRONG-TURNER MILLINERY COMPANY, *Appellant*, v. MRS. E. ROUND, *Appellee.*

SYLLABUS BY THE COURT.

1. EXEMPTIONS—*"Stock in Trade" Defined.* "Stock in trade," within the meaning of the act exempting certain property from sale upon execution or other process, means that form of property owned by a craftsman upon which he exercises his art, skill, or workmanship, and upon which he uses the tools of his trade or business.

2. SAME—*Elements of "Stock in Trade" Exempt to a Milliner.* Under the eighth subdivision of section 4700 of the General Statutes of 1915, exempting to the head of a family $400 worth of her stock in trade from sale upon execution or other process, the materials upon which a milliner exercised her skill and workmanship in making and trimming women's hats—the silks, velvets, ribbons, feathers, flowers, hat frames, etc., and the finished hats made by herself—are her stock in trade, and are protected from forced process invoked against her by a creditor.

3. SAME—*Proceeds of Insurance Policy on Exempt Property are Likewise Exempt.* The proceeds of an insurance policy which covered personal property which was exempt from forced process as stock in trade, and which was destroyed by fire, stand in the place of the exempt property, and are likewise exempt from forced process, and to the same extent.

Appeal from Norton district court; CELSUS A. P. FAULCONER, judge. Opinion filed January 10, 1920. Affirmed.

*E. N. Boatman,* of Norton, for the appellant.

*L. H. Wilder,* of Norton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal calls for an examination of the Kansas exemption law, so far as it relates to "stock in trade."

The defendant kept a millinery store in Norton. Her stock and fixtures were destroyed by fire. The loss was covered by insurance. The defendant owed the plaintiff about $700 on an open account for millinery goods, and plaintiff garnished the proceeds of the insurance policy.

The trial court held that $400 of the insurance money was

Millinery Co. v. Round.

exempt as proceeds of insurance upon defendant's exempt stock in trade, but sustained the garnishment as to the residue.

Plaintiff appeals, contending that the millinery goods destroyed by the fire were merchandise, and not stock in trade, and contending also that even if the goods had been exempt the proceeds of the insurance policy which covered the goods were not exempt.

The evidence disclosed that the defendant, who was the head of a family, kept an ordinary millinery store; that her stock consisted of shapes of hats, hat frames, and piece goods such as silks, velvets, ribbons, feathers, and flowers; and that she used these goods in trimming hat frames and in preparing them for sale. She had a separate price for each of these articles, and the price of each hat was the sum of the separate articles composing it plus a charge for her skill and work in putting them together. Plaintiff was in the habit of selling these millinery materials not made up, as occasion arose, but only about five per cent of her stock was thus retailed. At the time of the fire she also had on hand some "pattern" hats which she bought and sold as merchandise, and about fifty hats which she had made up from the materials in her stock.

The Kansas exemption statute is very lenient towards debtors, and it has stood for sixty years practically unmodified by the legislature. So far as here pertinent, it reads:

"Every person residing in this state, and being the head of a family, shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property: . . .

"*Eighth,* The necessary tools and implements of any mechanic, miner or other person, used and kept in stock for the purpose of carrying on his trade or business, and in addition thereto, stock in trade not exceeding four hundred dollars in value." (Gen. Stat. 1915, § 4700.)

"None of the personal property mentioned in this act shall be exempt from attachment or execution for the wages of any clerk, mechanic, laborer or servant." (Id. § 4703.)

(See, also, Kansas Stat. 1859 [Territorial], ch. 67, § 11; Complied Laws of 1862, ch. 92, § 11; Gen. Stat. 1868, ch. 38, § 3.)

Under the humane and generous purposes of this exemption clause, it has been held that the materials out of which watches are made, together with the finished watches made

by the debtor himself, are stock in trade of a jeweler and are exempted from execution if he is the head of a family. (*Bequillard v. Bartlett,* 19 Kan. 382, Syl. ¶ 4.) It has been held that the finished cheeses made by a cheesemaker herself were exempt from attachment, as well as the equipment necessary for making them. (*Fish v. Street,* 27 Kan. 270.) The cloth and trimmings out of which a merchant tailor made clothing were held to be exempt as stock in trade. (*Rice v. Nolan,* 33 Kan. 28, 5 Pac. 437.) Tin used for making tinware and for making a tin roof for a building, as well as the tinware made by the tinner, was held to be exempted as stock in trade in *Miller v. Weeks,* 46 Kan. 307, 26 Pac. 694.

The critical student of this exemption clause will readily discern that it exempts two distinct kinds of property—(1) tools and implements for use in the debtor's trade or business, and (2) in addition thereto, stock in trade to the amount of $400 in value. Under our statute, therefore, stock in trade means that form of property owned by a craftsman upon which he exercises his art, skill, or workmanship, and upon which he uses the tools of his trade or business.

It seems clear that the materials which composed the defendant's property and upon which she exercised her craft as a milliner constituted her stock in trade, and up to the value of $400 they were exempt from seizure under forced process. Of course the "pattern" hats were merchandise, but the fact that a small percentage of the goods was sold as merchandise when opportunity offered, and that they were all susceptible of being sold as merchandise, did not alter their inherent status as stock in trade. (18 Cyc. 1420.) Any other view would practically nullify the humane purposes of the legislature in enacting the statute. The stock in trade of any artisan is susceptible of sale as merchandise, and it would not do to say that if such artisan dared to sell as merchandise a few articles of his stock in trade he would imperil or waive his statutory exemption of $400 worth of it from forced process. Since the margin of insurance money above $400, upon which plaintiff's garnishment was allowed to operate, was more than sufficient to equal the value of the "pattern" hats sold as ordinary merchandise, that detail of the case will need no attention.

It will next be considered whether the proceeds of the insurance policy covering the exempted stock in trade were likewise exempt from seizure under forced process. Appellant cites cases from other jurisdictions holding that the proceeds of insurance upon exempt property are not exempt. But it was held long ago that our exemption law is in effect a Kansas institution, to be interpreted and applied in the spirit of Kansas jurisprudence, and that Kansas leads, and does not follow, in the interpretation of laws of this character. (*Jenkins v. McNall,* 27 Kan. 532, 533; *Rice v. Nolan,* 33 Kan. 28, 31, 5 Pac. 437; *Bliss v. Vedder,* 34 Kan. 57, 60, 7 Pac. 599.) In our own decisions, analogous precedents are not wanting. It has been held that where a span of horses which was exempt property was sold on execution, the money derived by the sale of the horses was likewise exempt, and was recoverable by the debtor without set-off by his too insistent creditor. (*Treat v. Wilson,* 65 Kan. 729, 732, 733, 70 Pac. 893.) Where a homestead was sold to satisfy valid liens, the surplus in cash after payment of the liens was held to be exempt from seizure by another judgment creditor who held no lien, so long as the debtor intended to use it in purchasing another homestead. (*Mitchell v. Milhoan,* 11 Kan. 617, Syl. ¶¶ 3, 4.) In *Continental Ins. Co. v. Daly, Adm'x,* 33 Kan. 601, 608, 7 Pac. 158, it was said that the insurance money paid as compensation for the loss of an exempt property (a dwelling house) would also be exempt, and that the collection of such insurance money was chiefly the concern of the heirs of the insured, and not of his administratrix.

It would not be helpful to go very far into the decisions of other jurisdictions on the question whether the proceeds of an insurance policy covering exempt property are likewise exempt, for a square conflict among those decisions is discovered as soon as we open the books. In Iowa, New York, Texas and California the view to which this court inclines seems to be upheld, while New Hampshire, Illinois and Mississippi hold to the contrary. (See note in 19 L. R. A. 34.) In *Reynolds et al. v. Haines,* 83 Iowa, 342, 32 Am. St. Rep. 311, 13 L. R. A. 719, where a creditor sought to garnish the proceeds of an insurance policy covering the (exempt) library of a physician, the court said:

"The statute must be liberally construed, to carry out its purposes and spirit. . . . The books, instruments, etc., of the physician and surgeon may be kept subject to the authority to change them, by sale or otherwise, in order to procure those of better character or improved construction. It is plain that the physician may sell his books and replace them with better ones. Such sale is a proper use of his books and instruments in his profession. Another proper use of his books and instruments is their preservation from injury and destruction. He may insure them, to protect himself and family from loss from fire. The fact that they were insured would not make them subject to his debts. If they are destroyed by fire, the indemnity secured by insurance stands in the place of the books. It is intended to preserve the physician's library by securing means for its restoration after it is lost by fire. Surely that indemnity which is the indebtedness of the insurance company, or the money paid by it, stands in the place of the library, and ought to be, as it is, exempt from execution. The money due on the policy stands in the place of the property destroyed, and this must be true whether the money takes the place of the property by contract, or is acquired *in invitum* by proceedings against the owner." (pp. 343, 344.)

(See, also, 18 Cyc. 1444; 11 R. C. L. 532.)

We doubt if either the true interest of creditors or the interest of the debtor or of society would be served by a narrow construction of our exemption law. If this woman is to discharge her duty to her family—and that is the chief concern of exemption acts (18 Cyc. 1374)—she should be protected and encouraged to reëmbark in her vocation and to reinvest the proceeds of the insurance in a new supply of her stock in trade. She will thus relieve society of concern touching the support of her family, and she will be enabled in time to pay the plaintiff creditor all that she justly owes. It was on the faith of her honesty, ability and diligence in the pursuit of her vocation that plaintiff sold goods to her upon an open account, and not on the assumption that it could seize all her insurance money if a fire should destroy her exempt stock in trade. If all the insurance money which stands in the place of defendant's stock in trade is subjected to plaintiff's garnishment, this woman will have no means with which to resume her business. The oft-declared public policy of this state is that she should be encouraged to do so.

The trial court's judgment withholding $400 of the insurance money from forced process and sustaining the plaintiff's garnishment as to the residue was correct.

The judgment is affirmed.