No. 23,733.

FARMERS & MERCHANTS STATE BANK, *Appellant*, v. J. C. MOORE
et al. (BERTHA P. MOORE, Garnishee, *Appellee*).

SYLLABUS BY THE COURT.

1. OKLAHOMA HOMESTEAD—*Sale—Proceeds Given to Wife—Proceeds Not Subject to Garnishment in Kansas for Husband's Debt.* The owner of a home-stead in Oklahoma was indebted to a bank in Kansas. A sale of the homestead was made, the wife signing the deed under the promise of the husband that he would give the proceeds to her, which he did when the deed was executed, it being the intention of both that she would use the money to purchase another homestead. Shortly thereafter and without investing in a homestead they became residents of Kansas, and the bank sued the husband on his debt, garnishing the wife. *Held*, under the laws of Oklahoma the husband had a perfect right to make such disposition as he pleased of the proceeds of the homestead, without committing any fraud upon his creditors, and the money therefore became the wife's property while their residence was in Oklahoma, and being her property, it is not subject to garnishment in Kansas for the husband's debt.

2. GARNISHMENT PROCEEDINGS—*Party in Interest—Competent Witness.* The wife, upon being garnished in an action against her husband, is a party in interest in the garnishment proceedings (Civ. Code, § 239), and upon exceptions to her answer, she is a competent witness.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed May 6, 1922. Affirmed.

*Archie D. Neale,* of Chetopa, for the appellant.

*E. L. Burton,* and *Paul MacCaskill,* both of Parsons, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In an action against her husband to recover on certain notes he owed to a bank, Bertha P. Moore was garnished. Her answer denied that she was indebted to her husband. The bank filed exceptions to the answer. The issue was tried by the court and judgment rendered in favor of the garnishee, from which the bank appeals.

The Moores lived in Oklahoma on an eighty-acre farm which was their homestead. The title was in the husband. On December 27, 1919, they sold the land for $3,400. About ten days after the sale Moore moved with his family to Chetopa, Kan., where they have since resided. The purchaser testified that Mr. Moore refused to accept a check for the purchase money and insisted upon cash before

he delivered the deed; that he paid the money, $3,400, to Moore and saw Moore give his wife the money. Bertha P. Moore, the garnishee, testified in substance: They had resided on the farm in Oklahoma eight years; they had a couple of prospective buyers before it was sold and she talked with her husband about it before the sale; she told Mr. Moore she would not sign the deed unless he promised to turn the money over to her; he said all right, he would do that; she later learned of the sale to Mr. Sellers; this conversation was about two weeks before the sale was finally consummated. When she learned of the sale she had the same conversation with her husband. They had eight children there living with them on the farm; this farm was all the property they had except some stock. She was at the First National Bank of Vinita when the deal was closed up; the purchaser counted out the money to Mr. Moore, and he counted it out to her. She gave her husband $300 of the money to pay some bills and a note for $110 that she had signed; she kept the money in her possession, placed some of it in the First National Bank of Chetopa and afterwards purchased negotiable drafts with it. One purpose in purchasing drafts was to prevent the creditors from getting it.

On cross-examination the wife was asked:

"Q. You claim that you had an arrangement with your husband to the effect that he was to turn the money over to you for the purpose of placing it in another homestead? A. Yes, sir.

"Q. That was the only arrangement you had with your husband? A. Yes, sir.

"Q. You had not made up your mind then as to where you would buy another homestead? A. No, sir."

She also testified that her husband was not indebted to her at that time.

The plaintiff bank contends that conceding the money from the sale of the homestead was exempt in Oklahoma, it lost its exempt character when Moore and his family became nonresidents of that state and moved to Kansas. Decisions of the supreme court of Oklahoma are cited holding that the homestead laws of that state apply only to a *bona fide* resident there and that a permanent removal from the state constitutes an abandonment of the homestead. No one will doubt the correctness of those decisions, and it may be conceded that money derived from the sale of a homestead in Oklahoma is, when brought into Kansas no longer exempt under the laws of Oklahoma. The plaintiff therefore argues the case as one

involving the exemption laws and insists that the garnishee must rely either on the exemption laws of Oklahoma or of Kansas in order to show a title to the money turned over to her by the husband. The testimony, however, shows that at the time of the sale of the Oklahoma farm the Moores had no intention of leaving Oklahoma, and attempted to rent property in Oklahoma, but being unable to do that they shortly afterwards changed their minds and became residents of Kansas.

Mrs. Moore's contention is that since the money was the proceeds of property exempt in Oklahoma under the laws of that state, her husband had a perfect right to give it to her; and since the money became hers before the family lost their residence in Oklahoma, it is still hers and not subject to garnishment for a debt of her husband. The courts of Oklahoma have followed the rule long ago declared in this state that a debtor may make such disposition as he pleases of the proceeds of exempt property without committing a fraud upon his creditors. (*Hixon v. George,* 18 Kan. 253; *Sproul v. Atchison National Bank,* 22 Kan. 336; *Citizens' Bank v. Bowen,* 25 Kan. 117; *Hopper v. Arnold,* 74 Kan. 250, 86 Pac. 469.) The Oklahoma cases are: *Kershaw v. Willey,* 22 Okla. 677, 98 Pac. 908; *Cook v. Carter,* 61 Okla. 62, 160 Pac. 877; *Alexander v. Bobier,* 166 Pac. 716.

In *Kershaw v. Willey,* supra, it was said:

"The spirit of the homestead law is to protect the wife and family against the improvidence of the head of the family, as well as against urgent creditors, and no one can complain if the wife of an insolvent husband refuses to sign a deed for the sale of the homestead until her husband agrees that the money procured as the proceeds of such sale may be transferred to her, and the execution of such deed by her is ample consideration to support the transaction." (Syl. ¶ 2.)

The plaintiff insists that "Bertha P. Moore claimed upon the garnishment trial that such money, being derived from the sale of a homestead in Oklahoma, was exempt and the trial court agreed with that contention and discharged the garnishee." True, Mrs. Moore claimed and proved that the proceeds of the sale of the homestead were exempt under the Oklahoma statute and decisions at the time the sale was made; but her claim goes farther than that. Her evidence shows that she refused to sign the deed except upon the promise of her husband that he would give her the money; that in pursuance of that arrangement the sale was effected, and he

gave her the money, which thereupon became her property, and of course not liable for debts of the husband. The exemption laws of Kansas have no application. From the time the money became hers, she does not need to rely upon any statute of exemptions.

We do not think the fact that she and her husband understood that she intended to use the money to purchase another homestead somewhere affects her right to claim to be the owner of the money. Nor do we think that a creditor of her husband can be concerned or the rights of such creditor affected by her failure within a reasonable time to invest the money in another homestead.

The bank insists that it was error to overrule the objection to the testimony of Bertha P. Moore on the ground that it called for a conversation between her and her husband. She was the real party in interest in the garnishment proceedings. (Civ. Code, § 239.) Under this provision the proceedings are deemed an action against the garnishee and defendant as parties defendant. Had she lost upon the issue of the exceptions to her answer, costs might have been taxed against her in favor of the bank. (Civ. Code, § 247.) We think the objection was properly overruled and that the testimony was competent.

The judgment is affirmed.