Putnam Investment Co. v. Titus.

No. 27,721.

The Putnam Investment Company et al., *Appellees*, v. W. P.
Titus et al., *Appellants*.

(266 Pac. 55.)

SYLLABUS BY THE COURT.

1. Exemptions—*Necessary Tools and Implements—What Constitutes.* Twelve
or more comparatively heavy and expensive pieces of machinery designed
for and capable of doing and finishing different kinds of woodwork for
cabinet and building purposes, assembled in a shop and propelled by a
15-horsepower electric motor, used and operated by the owner and three
or more employees of the owner, are not such "necessary tools and imple-
ments" as were contemplated and intended to be exempt to a resident head
of a family by the provisions of R. S. 60-3504.

2. Chattel Mortgages—*Necessity for Wife's Signature.* A chattel mortgage
covering personal property as above described and used is not void be-
cause it was not signed by the wife of the owner.

3. Exemptions—*Evidence.* The evidence considered and held as fully sup-
porting the general finding of the court.

Appeal from Saline district court; Dallas Grover, judge. Opinion filed
April 7, 1928. Affirmed.

*A. F. McCarty,* of Salina, for the appellants.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the ap-
pellees.

The opinion of the court was delivered by

Hutchison, J.: We have here two cases, one by the Putnam In-
vestment Company, the other by the Putnam Trust Company, both
against W. P. Titus, the first being based upon a contract and ac-
count, later secured by a chattel mortgage, and the latter upon a
note secured by a chattel mortgage. Replevin proceedings were re-
sorted to in both cases, redelivery bond being given in the first case
but not in the second. The personal property covered by the chat-
tel mortgages was, with a few exceptions, the same in each, and the
mortgage of the investment company was subject to that of the
trust company. The wife was permitted to interplead, and she and
her husband both pleaded exemption of the personal property in-
volved on account of the husband being a resident head of a family
and her not having signed either of the mortgages. The cases were

Exemptions, 25 C. J. pp. 10 n. 52, 49 n. 42, 108 n. 53, 161 n. 55; 2 A. L. R.
823; 52 A. L. R. 826; 11 R. C. L. 513.

consolidated and tried to the court. Judgment was rendered in favor of plaintiffs and the personal property involved was held to be not exempt. The defendants appeal.

The only question here is whether or not the personal property covered by the chattel mortgages is exempt to a resident head of a family; if it is, the appellants claim the mortgages are void because they were not signed by the wife. The description of the personal property included in the mortgage to the trust company is as follows:

"One sticker, one band saw, one lathe, one tenoner, one mortiser, one rip saw, one planer, one jointer, one shaper, one emery grinder, one cut-off saw, one frame machine, one sander, one 15-horsepower motor, all line shafting, all pulleys, all counter shafts, all belting, all clamps, all office equipment, and all other tools and articles located in the building at the corner of Second street and Elm street used in the business of the Titus Mill Work Company, and one Ford truck."

This mortgage was signed by "W. P. Titus, doing business as the Titus Mill Work Company." The mortgage given to the investment company about eight months later was signed in the same way and covered substantially the same property, concluding with the following statement: "Subject only to a mortgage now of record in favor of The Putnam Trust Company." The exemption is claimed under the eighth subdivision of R. S. 60-3504, which is as follows:

"The necessary tools and implements of any mechanic, miner or other person, used and kept in stock for the purpose of carrying on his trade or business, and in addition thereto, stock in trade not exceeding four hundred dollars in value."

It will be observed, in the first place, that this provision for exemption has not been changed or modified since its enactment in 1868, and, in the second place, it is and always has been different from similar provisions in some other states in that it contains a limitation or restriction as to the character and use of the tools and implements—they must be "necessary tools and implements." (See 2 A. L. R. 818.)

It has been the inclination of nearly all courts in considering exemption statutes to place a liberal construction on them—and the Kansas courts have always been in harmony with others in this respect—so as to effectuate the beneficent purposes of the law and at the same time keep the interpretation within the apparent and evident intention of the legislature. (25 C. J. 10; *Rasure v. Hart,* 18 Kan. 340; *Bequillard v. Bartlett,* 19 Kan. 382, 386; *Donmyer v.*

*Donmyer,* 43 Kan. 444, 23 Pac. 627; *Millinery Co. v. Round,* 106 Kan. 146, 186 Pac. 979.)

"As often stated by this court, the exemption laws must receive a liberal construction for the purpose of carrying out their object and design, and one of the main objects of exemption laws is that every person shall have the means of carrying on some useful business, and thereby of obtaining an honest livelihood." (*Davidson v. Sechrist,* 28 Kan. 324, 326.)

In the earlier Kansas cases the tools and implements held to be exempt were only those worked by hand. It was said concerning cheese vats, presses and knives that they were exempt tools and implements because "the evidence does not show that they, or any of them, constituted complicated and expensive machinery; nor does it show that they were not instruments or implements which could not be used by hand . . . or that they had the use of any other power than their own personal energy, force and strength." (*Fish v. Street,* 27 Kan. 270, 273.)

The first and general definition of tools given by text-writers is that they are such as are used by hand; but then they go further to show the modified application of the term to include simple and inexpensive machinery. (25 C. J. 49; 11 R. C. L. 512.) It was apparently the original thought on the subject that the tools were for the exclusive use of the owner, but a broader view has since been followed, and they may be exempt even if used by others in his employ. However, running through most of the Kansas decisions is the very evident requirement that the owner in the use of the tool or implement must perform a considerable portion of the work himself. For instance, in the case of *Fish v. Street,* supra, it is stated, "It does not appear that any one else assisted them"; in *Bequillard v. Bartlett,* supra, they "were so used with respect to the goods manufactured by the plaintiff himself"; in *Bliss v. Vedder,* 34 Kan. 57, 7 Pac. 599, "he performs a considerable portion of the work himself"; in *Miller v. Weeks,* 46 Kan. 307, 26 Pac. 694, "the proceeds of such work performed by himself were his sole means of support"; in *Reeves v. Bascue,* 76 Kan. 333, 91 Pac. 77, he "performs a considerable portion of the work himself."

The following cases show the development and change in the construction of this statute in this state as applied to machines or machinery being considered as tools and implements exempt from execution: The lamp, table, and other articles of the watchmaker in his trade, decided in 1877 (*Bequillard v. Bartlett,* supra); the cheese

vats, presses, knives, etc., used in making cheese, where the owner performed the work, decided in 1882 (*Fish v. Street*, supra); the printing press, type and job-printing outfit, where most of the mechanical work was done by others in the owner's employ, decided in 1885 (*Bliss v. Vedder*, supra); the threshing machine, tractor engine, belts, etc., used by the owner, with other necessary help, in threshing grain for his neighbor for hire, decided in 1905 (*Jackman v. Lambertson*, 71 Kan. 138, 80 Pac. 155); the tractor engine and portable sawmill used by the owner and other necessary help in sawing lumber for others for hire, decided in 1907 (*Reeves v. Basque*, supra). In all these cases the instruments or machinery were held to be tools or implements and exempt as such, thus recognizing the progress and development in the use of machinery to take the place of simple tools to accomplish the same work.

Among the recent cases on the same subject in other jurisdictions is one where it was held that well-drilling equipment was not a tool or implement within the meaning of the exemption statute. (*Thresher v. McEvoy* [Tex. Civ. App.], 193 S. W. 159.) A turning-lathe used by a machinist in a repair shop was held to be exempt. (*Smith v. Roads*, 29 Okla. 815.) An electric motor and a lathe used in a general repair business was held to be an exempt tool. (*In re Robinson*, 206 Fed. 176.) A machine for projecting moving pictures and a metal-machine outfit were held to be exempt implements in *Campbell v. Honaker's Heirs* (Tex. Civ. App.), 166 S. W. 74. Potato machinery, with planter, sprayer and digger, was held not to be an exempt tool in *Martin v. Buswell*, 108 Me. 263. A printing press and gasoline engine to run it were held to be exempt in *Harris v. Townley* (Tex. Civ. App.), 161 S. W. 5. The machinery connected with a grain mill, propelled by an electric motor, was held not exempt in *Peyton v. Farmers' Nat. Bank*, 261 Fed. 326. In the last case the court stresses the distinction between hand power and electric or other propelling power.

In nearly all of the decisions above cited from our own and other states reference is made to the use of the machine by the owner, or by himself and others, and the number of men employed; also, to the number of machines or pieces of machinery, the size, weight, cost and value of each, and whether they are used for one purpose or more than one, thus taking into consideration all these features and facts to help determine the distinction between a tool and machinery. "It is impossible, however, to draw a precise line between

'tools' and 'machinery,' and attempts to do so have not resulted in any very clear distinctions." (2 A. L. R. 823.)

The questions before us are whether the property above listed was tools and implements or machinery, and whether or not such property was necessary as such for the use of the owner. The former is a question of law and the latter a question of fact, both decided by the trial court against the contention of the appellant. Was the decision on the question of law correct, and was there sufficient evidence before the court to support his decision on the question of fact?

"Where the exemption is of tools and implements necessary for carrying on the business of the debtor, whether the articles may be denominated tools or instruments is a question of law, but whether they are necessary for carrying on the debtor's business is a question of fact. . . . Under the general rule that complicated machinery is not exempt as tools, articles popularly known as 'machines' and not as 'tools' are not exempt as 'tools.'" (11 R. C. L. 513. See, also, 52 A. L. R. 826.)

Among the facts before the trial court in this case upon which its determination was reached and which are similar to the features considered in the cases cited above are that the defendant, W. P. Titus, did business and advertised under the name of the Titus Mill Work Company and used the advertising slogan, "If it is made of wood, we make it." He had been in the same line of business in the same place for nearly ten years. He was foreman of the work, and had in his employ never less than three men, and sometimes had as many as fourteen. The machinery was installed in a two-story frame building, 48 by 40 feet, and propelled by a 15-horsepower electric motor with a shaft and countershaft. There were 13 pulleys on the shafts and there were 13 or 14 machines propelled thereby. All but two of the machines were set on the ground in the lower story; the other two upstairs. The probable weight of the various pieces of machinery, as given by the defendant is as follows: sticker, 1,800 pounds; bandsaw, 600 to 700 pounds; tenoner, 500 to 600 pounds; mortiser, 700 to 800 pounds; ripsaw, 100 to 150 pounds; planer, 800 pounds; shaper, 400 to 500 pounds; cut-off saw, 300 to 400 pounds; frame machine, 1,200 to 1,400 pounds. The probable weight of two other pieces, given by another witness, is as follows: Emery grinder, 75 to 100 pounds; joiner, 800 pounds.

The cost of some of the machines, as stated in the evidence by the defendant, was as follows: Sticker, $1,250; mortiser, $425;

tenoner, $400; Ford truck, $450. The total cost of all the machinery in the mill, defendant said, was about $6,500, with a present value of about $1,500 or $1,600. The average cost for electric current to run the machinery was about $40 per month. He did not construct buildings, but took contracts from builders for window and door frames, cabinet work, moulding, etc., some contracts amounting to over $2,000. During the last full year before the commencement of these actions his business amounted to over $18,000, on which he estimated the profit to be 20 per cent, or $3,600. The defendant worked on all these machines at different times, managed the business, solicited new business, kept the books, made collections, and paid expenses. The help continued the work while he was necessarily absent from the shop.

Perhaps not any one of the several features in the case would in and of itself determine the question as to whether this equipment or any part of it was a tool or a machine. Neither the fact that there were several pieces of machinery instead of one or two, the fact that the propelling power was electricity through a 15-horsepower motor, that many kinds of finished work were produced instead of only one, that a number of men were employed to use the equipment, the weight or cost of the several pieces of machinery, nor the cost of running the plant, the value of the finished product and the estimated income or profit, standing alone, would determine the question. But when we consider all these features together we are unable to conclude as a matter of law that these instruments described in the mortgages are tools and implements as contemplated by the statute. It would, we think, require much more than a liberal construction to find them to be what the legislature had in mind when it mentioned tools and implements. We also think there was sufficient evidence to justify the trial court in finding that such machinery was not the necessary equipment—tools and implements—intended by the statute to be exempt.

We therefore conclude that the personal property described in the chattel mortgages was not exempt to the defendant as a resident head of a family, and the mortgages were not void. Having reached this decision, the question of subrogation discussed in the briefs need not be here determined.

The judgment of the trial court is affirmed.

Burch, J., not sitting.