In re Jerome SAYLER, a/k/a Jerry
Sayler; and Margaret Elaine
Sayler, Debtors.

The PEOPLES STATE BANK &
TRUST COMPANY,
Plaintiff–Appellee,

v.

Jerome SAYLER; Margaret Elaine Say-
ler; and Lynn D. Allison, Trustee,
Defendants–Appellants.

Civ. A. No. 86–1854–K.
Bankruptcy No. 85–11742.
Adv. No. 86–0024.

United States District Court,
D. Kansas.

June 23, 1987.

Mark D. Calcara, Watkins, Calcara &
Rondeau, Great Bend, Kan., for American
State Bank & Trust Co., Great Bend.

Ernest McRae, McRae & Early, Wichita,
Kan., for Jerome Sayler and Margaret
Elaine Sayler.

Lynn D. Allison, Wichita, Kan., trustee.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is an appeal by debtors Jerome and
Margaret Sayler from a bankruptcy court
order sustaining the trustee's and credi-
tors' objections to the debtors' claim of
exemption of certain life insurance policies.
68 B.R. 111. For the reasons set forth
herein, the case is reversed and remanded
to the bankruptcy court.

Jerome Sayler is a medical doctor in
Great Bend, Kansas, and at all relevant
times hereto was a principal and stockhold-
er in Central Kansas Pathological Associ-
ates, Chartered. In 1985 he was a benefi-

ciary, and designated trustee, of two ERISA qualified plans ("plans"). On June 1, 1985, pursuant to the terms of the plans, Dr. Sayler withdrew all of his vested benefits totaling $585,000.00. At that time, lawsuits were pending against him for collection on debts he owed to the American State Bank, the Security State Bank, and the Peoples State Bank, for a total of $850,000.00. Dr. Sayler was hopelessly insolvent in that his liabilities substantially exceeded his assets and he was generally not paying his obligations as they came due.

As of June 1, 1985, when Dr. Sayler began withdrawing his vested plan benefits, he was the owner of, and insured under, eleven insurance policies with a total cash value of $291,649.53, and with a face value of $1,190,300.00. Two of these policies were USF & G term policies which the debtor had taken out in 1978. Under the terms of the policies, Dr. Sayler was required to convert the term policies to universal policies when he reached the age of 65. Because he turned 65 in July of 1985, he paid the premiums and converted the policies on May 20, 1985.

Prior to withdrawing his ERISA fund benefits, Dr. Sayler began consulting with Robert Laing, an agent for Southwestern Life Insurance Company. Dr. Sayler was advised of the decision *In re Threewitt*, 24 B.R. 927 (D.Kan.1982), in which this court found that a qualified ERISA plan was excluded from the bankrupt's estate because of the spendthrift-type provisions in the trust of the bankrupt's ERISA plan. Dr. Sayler discussed this case with Mr. Laing and with his attorney. He was advised that because both ERISA plans and insurance policies were exempt in bankruptcy proceedings, he should purchase insurance because he would receive a better return, his taxes would be paid in a lump sum after which his wife would receive insurance proceeds income tax free, and the dividends would pay the premiums so long as interest rates remained at some rate over 4%. Mr. Laing, on behalf of Southwestern Life Insurance Company, offered what is known as a universal insurance policy which permits the payment of a substantial single premium, which is then invested by the insurance company and the income used to pay future premiums. Dr. Sayler discussed the alternatives of a policy with a smaller face value which would have been paid in full. He also discussed the investment opportunities represented by the insurance policy and understood fully that any investment income was sheltered by the life insurance tax rules.

On or about June 1, 1985, Dr. Sayler withdrew his ERISA funds and proceeds to: (1) pay approximately $200,000.00 in taxes on the lump sum distribution of the plan funds; (2) pay off the mortgage on his home and remodel his homestead; (3) purchase two new automobiles; (4) purchase miscellaneous household goods; (5) pay accounting and legal fees; (6) pay off all or part of loans in existing insurance policies; (7) pay off a personal loan at a bank; and (8) convert two existing USF & G term policies, purchased in 1978, to universal policies with effective dates of May 3 and May 20, 1985. With the balance of the proceeds from the withdrawal of the plan funds, Dr. Sayler made payments to Southwestern Life Insurance Company for a policy with a face amount of $350,000.00 and a cash value of approximately $166,000.00. The beneficiary of this policy was Mrs. Sayler.

Dr. Sayler and his wife filed their petition for relief under Chapter 7 on September 18, 1985. This was approximately 5½ months after the Southwestern Life Insurance Company policy was issued.

On November 29, 1985, the trustee filed his objection pursuant to K.S.A. 40–414 to the debtors' claimed exemption of the Southwestern Life Insurance Company policy. Shortly thereafter, creditors of the debtors, including the Peoples State Bank & Trust Company, filed objections to the claimed exemption of both the Southwestern Life policy and the two USF & G policies which were converted in 1985.

A trial was held to the bankruptcy court, and upon completion thereof the court found that the USF & G policies and the Southwestern Life policy were issued within one year of the filing of bankruptcy with

the intent to defraud creditors. The court thus concluded, pursuant to K.S.A. 40–414, that the policies were nonexempt. From this finding, the debtors brought their appeal.

Bankruptcy Rule 8013 provides:

On an appeal the district court of bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. *Findings of fact shall not be set aside unless clearly erroneous*, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

(Emphasis added.)

In *In re Branding Iron Motel, Inc.*, 798 F.2d 396 (10th Cir.1986), the Tenth Circuit affirmed that "the district court ... must accept the factual findings of the bankruptcy court unless they are clearly erroneous ... [however] [i]t is appropriate for the district court to review *de novo* the bankruptcy court's legal determinations...." 798 F.2d at 399–400.

When reviewing factual findings, the district court is not to weigh the evidence or reverse the finding because it would have decided the case differently. *Id.*, at 400. A trial court's findings may not be reversed if its perception of the evidence is logical or reasonable in light of the record. "The bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *In re Reid*, 757 F.2d 230, 233–34 (10th Cir.1985) (quoting *Kansas Federal Credit Union v. Niemeier*, 227 F.2d 287, 291 (10th Cir. 1955)). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Campbell v. Campbell*, 198 Kan. 181, 187, 422 P.2d 932 (1967).

■ Additionally, a bankruptcy court's finding of fraudulent intent on the part of a debtor is a finding of fact, rather than a conclusion of law, and so may be reversed only if it is clearly erroneous. *See Credit*

*Union of America v. Myers*, 234 Kan. 773, 780, 676 P.2d 99 (1984).

The debtors first challenge the bankruptcy court's finding that the two USF & G insurance policies were issued within one year prior to bankruptcy, and so are nonexempt under K.S.A. 40–414(b)(1). That statute provides:

(b) The nonforfeiture value of a life insurance policy shall not be exempt from:

(1) claims of the creditors of a policyholder who files a bankruptcy petition under 11 U.S.C. § 101 *et seq. on or within one year* after the date the policy is issued if the policy was obtained by the debtor for the purpose of defrauding one or more of the debtor's creditors;

(Emphasis added.)

■ The two USF & G policies were reissued upon conversion of term policies on May 20, 1985. In other words, the debtor had existing term policies with USF & G which, upon the payment of $13,-297.00, were converted to universal life policies having face amounts of $100,000.00. Had the policies not been converted, they would have lapsed on the debtor's 65th birthday.

The bankruptcy court, in determining the "issue" date, relied on *Fisher v. Central Surety Ins. Co.*, 149 Kan. 38, 46, 86 P.2d 583 (1939), wherein the court stated:

Ordinarily, by "issue" of an insurance policy is meant its delivery and acceptance whereby it comes into full effect and operation as a binding obligation.

The bankruptcy court then found that each of the policies in question bore "issue dates" of May 3 and May 20, 1985; further, the insurance provisions provided that the effective date for coverage would be the "policy date". The court then concluded that the date of issue and the policy date are the same, and thus both policies were "issued" within one year prior to bankruptcy. The court found that since a new policy was issued, the "conversion" did not relate back to the original issue date of the term policies, as debtors argue.

In challenging the court's conclusion, the debtors concede that the date of issue is a question of fact which can only be reversed by this court if clearly erroneous.

Because the bankruptcy court's finding as to the issue date of the two USF & G policies is "logical and reasonable in light of the record," this court must affirm the bankruptcy court's finding. The policies themselves state that the issue date is May of 1985. Thus, the bankruptcy court's finding is not clearly erroneous.

At the time the debtors filed this appeal, they argued that the bankruptcy court had committed reversible error in finding that creditors need not have a "peculiar equity" in proceeds used to purchase life insurance policies in order to challenge their exempt status pursuant to K.S.A. 40–414. Since that time, the court has addressed the very issue in *In re Mueller*, 71 B.R. 165 (D.Kan. 1987). In that case this court found there is no "peculiar equity" requirement under K.S.A. 40–414 as there was at common law. In light of this court's earlier decision, the debtors have waived their argument in this regard.

The debtors argue that even if K.S.A. 40–414(b)(1) does not require that the creditors have a peculiar equity in the proceeds, it nonetheless should not have been applied in this case, and the bankruptcy court should have found the policies to be exempt. Specifically, debtors argue that the bankruptcy court's finding that they had a "fraudulent intent" when they purchased the insurance policies is clearly erroneous.

■ Debtors first assert that because the policies were purchased with money obtained from an ERISA plan which would have been exempt pursuant to this court's decision in *In re Threewitt*, the monies were never subject to creditors' claims and so were not subject to attack by those creditors. The bankruptcy court rejected this argument.

This court must agree with the bankruptcy court and reject debtors' argument for two reasons. First, this court's opinion in *Threewitt*, while persuasive here, is a minority view. Further, as the court was advised at oral argument, at the time the debtors filed their petition an appeal was pending before the Kansas Court of Appeals wherein Peoples State Bank was claiming the funds it loaned to Dr. Sayler, which were secured by the ERISA plan, were obtained by false pretenses. If the appeal had been successful, the ERISA funds would have been at risk despite any claim of exemption. Thus, the debtors were not assured that the ERISA plan funds were exempt.

Second, the debtors' argument assumes that the life insurance policies were exempt assets. However, under K.S.A. 40–414, life insurance policies purchased within one year of bankruptcy are *not* exempt if they were purchased with an intent on the part of a debtor to defraud creditors. The bankruptcy court found that the debtors did have a fraudulent intent. Although debtors argue this finding is clearly erroneous, they are asking this court to find the insurance policies were exempt *because* they were purchased with exempt ERISA plan monies, regardless of the debtors' intent in purchasing them.

Debtors rely on cases which hold that "proceeds of exempt property are exempt to the debtor for a reasonable time to enable him, if he sees fit, to invest the money in *other exempt property....*" *Tally v. Palmer*, 112 Kan. 391, 392, 210 P. 1104 (1922) (emphasis added); *see also Millinery Co. v. Round*, 106 Kan. 146, 186 P. 979 (1920); *Bank v. Moore*, 111 Kan. 344, 206 P. 907 (1922). In these cases, the creditors attempted to reach proceeds of debtors' exempt assets, although the debtors intended to purchase other exempt assets, such as a homestead, with these proceeds. These cases are distinguishable. The life insurance policies herein are not *per se* exempt, that is, if the debtor has a fraudulent intent of purchasing them, they are *not* exempt. This is in contrast to a homestead which, in any case, is exempt. Thus, these cases are simply not applicable to the case at bar.

Accordingly, the court must reject the debtors' "exempt to exempt" argument. Life insurance purchased within one year

of bankruptcy—as here—is exempt *only* if the debtors did not have fraudulent intent.

The final issue which must be resolved by this court is whether the bankruptcy court erred in finding the debtors had "fraudulent intent" in purchasing the life insurance policies.

This court addressed the requirement of "fraudulent intent" under 40–414 in *In re Mueller*. In *Mueller*, this court adopted the criteria set forth in *Matter of Mehrer*, 2 B.R. 309 (E.D.Wash.1980), which Judge Morton relied upon in *In re Washburn*. These "criteria" or "circumstances" evidencing an intent to defraud are:

> (1) whether there was a fair consideration paid for the life insurance policy; (2) whether the debtor was solvent or insolvent as a result of the transfer or whether he was insolvent at the time of the transfer; (3) the amount of the policy; (4) whether the debtor intended, in good faith, to provide by moderate premiums some protection to those to whom he had a duty to support; (5) the length of time between the purchasing of a life insurance policy and the filing of the bankruptcy; (6) the amount of nonexempt property which the debtor had after purchasing the life insurance policy; and (7) the debtor's failure to produce available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition.

*Mueller,* 71 B.R. 168.

This court then found that while not every circumstance need be shown, there must be "sufficient indicia of fraud to rise to the level of clear and convincing evidence." *Id.* at 169. In *Mueller,* this court affirmed the bankruptcy court's finding of fraudulent intent. The bankruptcy court had found that five of the "badges of fraud" were present, and that these circumstances established fraud by clear and convincing evidence. In *Mueller,* the bankruptcy court had found not only that the debtor intended to keep his assets from his creditors, but that he did so *with* the intent to defraud. This court held that such findings were not clearly erroneous.

In this case, the debtors argue the bankruptcy court failed to employ the clear and convincing standard in reaching its conclusion of intent to defraud. This court agrees that an improper legal standard was applied. Although the bankruptcy court enumerated the *Mehrer* criteria for finding fraud, it failed to analyze the factors under the clear and convincing standard. Instead, the court looked only to factors which showed Dr. Sayler had the intent to place his assets out of the reach of creditors, *not* that he intended to defraud them. The bankruptcy court stated:

> Kansas does not necessarily contemplate a dishonest or immoral motive in allowing creditors to recover a "fraudulent" transfer. Rather, the court must merely conclude that the debtor intended to place the assets out of the reach of creditors.

(Memorandum of Decision, Oct. 10, 1986, p. 28.) The factors the bankruptcy court found relevant were: (1) the debtor purchased the policies five months before filing bankruptcy; (2) he had other insurance policies and so did not intend to provide "by moderate premiums" protection for his wife; and (3) the debtor was insolvent at the time. It is unknown to this court whether the bankruptcy court would have found these factors to be "clear and convincing" evidence of fraud.

In *Washburn,* Judge Morton noted that "the right to convert nonexempt assets into exempt assets is recognized in Kansas and is the majority rule." In *Mueller,* this court stated "the mere fact that the debtor converted nonexempt property to exempt property on the eve of bankruptcy would be insufficient to support a finding of fraudulent intent." The legislative history of the 1978 Bankruptcy Act establishes that Congress intended to allow debtors to make full use of statutory exemptions by permitting debtors to convert nonexempt property to exempt property before bankruptcy:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not

fraudulent as to creditors and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5862, 6317.

It is clear in this case, as the bankruptcy court found, that the debtor intended to keep the assets he used to purchase the life insurance out of the reach of creditors. He admitted he was advised by Mr. Laing as to defensive estate planning. He was obviously concerned that the ERISA plan might not be exempt, as *Threewitt* was the only authority for its exempt status. At the same time, the debtor wished to avoid heavy tax liability while retaining the exempt status of these funds. Even so, such defensive planning—alone—has never been enough to establish fraudulent intent. *See Ford v. Poston*, 773 F.2d 52 (4th Cir.1985); *In re Butts*, 45 B.R. 34 (Bankr.N.D.1984). Thus, the bankruptcy court's statement in the case at bar, to the effect that it needed only to find the debtor intended to shield his assets from creditors, is a misstatement of law.

Further, K.S.A. 40–414 makes clear that a debtor's purchase of life insurance within one year prior to bankruptcy is not enough, by itself, to cause him to lose his exempt status. The creditors must be able to show fraudulent intent on the part of the debtor. It is noteworthy that the legislature chose not to include the words "delay or hinder" along with the word "defraud". These words are used together in 11 U.S.C. § 548, and K.S.A. 33–102, both of which apply to fraudulent transfers. *See also Polk v. Polk*, 210 Kan. 107, 499 P.2d 1142 (1972); *Hardware Co. v. Semke*, 105 Kan. 628, 185 P. 732 (1919) (intent to keep assets from creditors, that is, to delay or hinder creditors, is "fraud at law" for purposes of establishing a "fraudulent conveyance"). Clearly, by leaving out the words "delay or hinder", the legislature intended that a higher standard be applied in finding life insurance to be nonexempt than in finding other fraudulent conveyances nonexempt. Thus, in the case of life insurance, the bankruptcy court must find actual fraud by clear and convincing evidence.

This court is aware that by drawing a distinction between intending to keep assets away from creditors and intending to defraud those creditors, the court is drawing a very fine line. However, the distinction is an important one which must be made if K.S.A. 40–414 is to have any meaning. Clearly, most people who purchase life insurance policies on the "eve" of bankruptcy are attempting to shield these assets from creditors. Yet, under the Kansas statute, this fact alone is insufficient to make the insurance policy nonexempt. There must also be an "intent to defraud." Thus, there must be something *more* than an intent to shield assets.

Because the bankruptcy court employed an erroneous legal standard, this court must conclude that its finding of fact as to the debtors' intent was clearly erroneous. This court is not in a position to reweigh the evidence. Therefore, the case will be remanded to the bankruptcy court, where the court is to make findings of fact as to each of the "badges of fraud" set forth in *Mueller*. The court must then determine whether the Saylers' circumstances give rise to clear and convincing evidence of fraud. If—and only if—the court finds an intent to defraud by clear and convincing evidence, it may sustain the objections to the debtors' claimed exemptions of the life insurance policies.

IT IS ACCORDINGLY ORDERED this 23 day of June, 1987, that the bankruptcy court's order sustaining the trustee's objection to debtors' claim of exemption of certain life insurance policies is reversed and remanded.