### In the Matter of Victor Henry MEHRER, whose wife is Ella Christine Mehrer, Debtor.

### Bankruptcy No. B–77–759.

United States Bankruptcy Court, E. D. Washington.

Jan. 25, 1980.

Charles C. Countryman, Yakima, Wash., for bankrupt.

---

Frank L. Kurtz of Kurtz & Hurley, Yakima, Wash., for trustee.

## MEMORANDUM DECISION

L. WARDEN HANEL, Bankruptcy Judge.

This matter came for hearing on October 5, 1978 on the bankrupt's objection to the trustee's disallowance of exempt property.

## FACTS

Mr. Mehrer, the bankrupt herein, had successfully operated a business of buying and selling hay and grain on the wholesale level under the assumed name of Inland Hay & Grain from approximately 1950 to 1977. In addition to that business Mr. Mehrer became interested in and subsequently traded on the futures commodity market. The evidence showed that in June of 1976 he began trading in the market through the brokerage firm of Hornblower & Weeks located in Yakima, Washington.

Mr. Mehrer was apparently successful in the futures market until April 19, 1977 when the market "turned against him". In other words, on that day the market quickly moved in a direction adverse to the position which Mr. Mehrer had assumed. When a margin call was requested from him he was unable to comply and thus his contracts were sold at a loss of approximately $200,-000.00 to Mr. Mehrer and $237,000.00 to Hornblower & Weeks. It is undisputed that from this time forward Mr. Mehrer was unable to meet his financial obligations to Hornblower & Weeks or to other creditors.

On May 4, 1977 Mr. Mehrer met with his attorney, Mr. Charles C. Countryman, to discuss, among other matters, the possibility of filing a petition in bankruptcy. On that date, according to Mr. Mehrer's statement of affairs, he paid Mr. Countryman $1,050.00 for attorney fees and the filing fee for this bankruptcy. Although the evidence does not show the exact nature of the conversations between Mr. Mehrer and his attorney it is clear that shortly thereafter Mr. Mehrer began to systematically liquidate his assets. The statement of affairs and testimony at trial showed that on May 6, 1977 Mr. Mehrer sold to his brother certain assets. Included in these assets was Mr. Mehrer's one-half interest in a parcel of real estate which he jointly owned with his brother, a 1974 Mercury automobile and a 1973 camper trailer. The total amount Mr. Mehrer received from his brother for these assets was $24,300.00. Additionally, the evidence showed that Mr. Mehrer collected approximately $100,000.00 in accounts receivable from January, 1977 to shortly before the bankruptcy was filed. On the date the bankruptcy petition was filed there were no outstanding accounts receivable. The evidence also showed that although Mr. Mehrer had a significant amount of cash on hand he borrowed $13,000.00 against his mobile home thus reducing his equity in that collateral.

With these funds Mr. Mehrer paid off certain chosen creditors, bought a highly encumbered automobile and purchased a paid-up $45,000.00 life insurance policy on his life naming his wife and children as beneficiaries. Although the trustee was not able to ascertain from Mr. Mehrer exactly where the money he used to buy the policy came from it is clear that it was drawn out of his business account. In regard to the allegation that Mr. Mehrer paid off certain creditors the evidence showed that Mr. Mehrer repaid one creditor a long-time personal friend, living in Canada, the sum of $21,000.00 on an antecedent debt after the April 19, 1977 loss and with some payment inside the four month period referred to in Section 67 of the Bankruptcy Act (11 U.S.C. § 107).

Finally, on September 20, 1977 Mr. Mehrer filed a petition in bankruptcy with this Court. In Schedule B-4 Mr. Mehrer claimed exempt, among other things, the cash surrender value of the life insurance policy issued June 1, 1977. This exemption was claimed under the provisions of R.C.W. 48.18.410. On the bankrupt's objection to the trustee's disallowance of exemption the matter of the insurance policy is now before this Court.

At the trial there was conflicting testimony and theories as to why Mr. Mehrer liquidated his assets. Mr. Mehrer asserts that he sold the real estate and collected his accounts receivable since he no longer wished to pursue operating Inland Hay & Grain but wished to exclusively trade in the futures market. Mr. Kurtz, on the other hand, insists that Mr. Mehrer's motivation for selling the real estate and collecting his accounts receivable was in contemplation of bankruptcy. He relies on the fact that it was after Mr. Mehrer had lost substantial funds in the futures market, and after having conferred with his attorney, that Mr. Mehrer took any action to liquidate his assets although Mr. Mehrer's testimony was that he decided to terminate his business sometime in January of 1977. In response to Mr. Mehrer's statement that he wished to exclusively trade in the market, Mr. Kurtz questioned him as to how he planned to continue trading in the market after having suffered such a financial set-back that he was not even able to pay his broker some $237,000.00. To this question Mr. Mehrer had no answer.

Similarly, there was conflicting testimony and theories as to why Mr. Mehrer withdrew money from his banking account. Mr. Mehrer contends that his motivation in doing so was to pay off his creditors and provide his wife with security for the future by purchasing a life insurance policy. Mr. Kurtz contends that Mr. Mehrer was aware that Hornblower & Weeks or some other creditor might garnishee his account and therefore he withdrew the funds. Suffice it to say Mr. Mehrer's testimony supports both theories.

## CONCLUSIONS

Section 70 of the Bankruptcy Act (11 U.S.C. § 110) provides that on the date the petition in bankruptcy is filed all property, except so far as it is exempt, passes to the trustee by operation of law. Section 6 (11 U.S.C. § 24) states that in determining which property is exempt reference is made to state law in force on the date of the filing of the petition in the state where the bankrupt was domiciled for six months preceding the filing of the petition. In the instant case the relevant exception statutes are found in Washington state law.

In Washington the legislature has provided that proceeds and avails of a life insurance policy shall be exempt from all liability for any debt. R.C.W. 48.18.410(1) provides:

> Exemption of proceeds—Life. (1) The lawful beneficiary, assignee, or payee of a life insurance policy, other than an annuity, heretofore or hereafter effected by any person on his own life, or on the life of another, in favor of a person other than himself, shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the insurance, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, existing at the time the proceeds or avails are made available for his own use.

Proceeds and avails has been interpreted to include cash surrender value. *In re Elliott*, 74 Wash.2d 600, 446 P.2d 347 (1968).

There is, however, an exception to the granting of this exemption. If the premiums used to pay for the life insurance policy or any portion of them are paid with intent to defraud creditors then the creditors are allowed to recover such proceeds with interest. See, *Levinson v. Greene*, 296 F. 598 (9th Cir. 1924). R.C.W. 48.18.-410(3)(c) provides:

> The exemptions provided by subsection (1) of this section, subject to the statute of limitations, shall not apply . . .
> (b) to any claim to or interest in such proceeds or avails by or on behalf of any person to whom rights thereto have been transferred with intent to defraud creditors; but an insurer shall be liable to all such creditors only as to amounts aggregating not to exceed the amount of such proceeds or avails remaining in the insurer's possession at the time the insurer receives at its home office written notice by or on behalf of such creditors, of claims to recover for such transfer, with specification of the amounts claimed.

The determination of whether the bankrupt intended to defraud his creditors is one of ultimate fact upon which a consideration of the attending facts and circumstances is necessary. In this regard one Washington Court has held:

It is true that fraud is never presumed, and, where alleged, must be proved by clear and convincing evidence. It is sometimes said that fraud is easily charged and hard to disprove. This is true, but it is also true that fraud is easily committed and hard to prove. A fraudulent intent is seldom confessed or blazoned upon a banner. In most cases, it can only be proved by circumstantial evidence. . . . *Allen v. Kane*, 79 Wash. 248, 140 P. 534 (1914).

■ Among the circumstances which, if present, would lead this Court to the unmistakable conclusion that the bankrupt intended to defraud his creditors by buying life insurance on the eve of bankruptcy are the following; (1) whether there was fair consideration paid for the life insurance policy; (2) whether the bankrupt was solvent or insolvent as a result of the transfer or whether he was insolvent at the time of the transfer; (3) the amount of the policy; (4) whether the bankrupt intended, in good faith, to provide by moderate premiums some protection to those to whom he had a duty to support; (5) the length of time between the purchasing of a life insurance policy and the filing of the bankruptcy; (6) the amount of non-exempt property which the debtor had after purchasing the life insurance policy; (7) the bankrupt's failure to produce available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition.

■ In view of these factors this Court is of the opinion that given the circumstances in this case it is evident that Mr. Mehrer purchased the life insurance policy while insolvent and on the eve of bankruptcy with the intent to protect for himself as much of his property as possible. While it is true that the transaction between Mr. Mehrer and the insurance company was a bona fide one, i. e., fair consideration was given in exchange for the insurance policy, that does not mitigate against the fact that all other circumstances lead to the conclusion that Mr. Mehrer intended to defraud his creditors by placing his property in an exempt status.

The evidence produced at trial showed that Mr. Mehrer, while insolvent, either liquidated all his non-exempt assets into cash or encumbered them, collected his accounts receivable, paid off certain favored creditors and bought paid-up life insurance policy through a lump-sum payment of $45,000.00. Although it is a commendable act by one charged with providing for his loved ones to want to protect them in the event of his death, Mr. Mehrer could have provided for his wife by purchasing a term life insurance instead of the paid-up insurance policy which he bought while contemplating bankruptcy in which liabilities totaling over $403,000.00 would be discharged.

Additionally, this Court is of the opinion that Mr. Mehrer's convenient lack of memory as to the circumstances surrounding the actions taken by him after the loss of April 19, 1977 is not to be believed. It is hard to imagine that a man who dealt successfully in the grain business for 18 years and later in the futures market dealing with thousands of dollars could be so forgetful of events which recently occurred when things began to fall apart. In the opinion of this Court Mr. Mehrer's credibility is at best subject to question.

■ Counsel for Mr. Mehrer has cited authorities which hold that it is not fraudulent per se for an insolvent debtor to convert non-exempt property into exempt property on the eve of bankruptcy. With this proposition the Court agrees. However, those cases are not applicable here because in those cases the property acquired was absolutely exempt under state statutes, while in the case at bar the statute expressly provides that no exemption is created when the payment is made with intent to defraud creditors.

On the basis of the foregoing Memorandum Opinion which is hereby adopted as my Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752, it is;

ORDERED that the bankrupt's objection to the trustee's disallowance of exempt property be and the same is hereby denied.

FURTHER ORDERED that counsel for the trustee submit an Order in conformity with the foregoing.