**In re Stanley Robert SUMMERS, Jr. and Dianne Ariel Summers, Debtors.**

**Bankruptcy No. 687–06143.**

United States Bankruptcy Court, D. Oregon.

April 1, 1988.

Gavin W. Armstrong, Eugene, Or., for debtors.

Eric R.T. Roost, Eugene, Or., for trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court upon the trustee's objection to the debtors' claimed exemption in the cash surrender value of life insurance policies. The parties have stipulated to the following facts:

Debtors filed their Chapter 7 petition on January 28, 1987 and claimed as exempt, under O.R.S. 743.099(3), the cash surrender value of a Prudential Life Insurance policy and a Standard Life Insurance policy.

The trustee made a timely objection to the debtors' claim of exemption. It appears however, from the record, that the trustee challenges only the cash surrender value of the Prudential policy.

On the date debtors filed their petition herein, debtor, STANLEY SUMMERS, was the owner of a Prudential life insurance policy (the policy) having a cash surrender value of $15,116.16. This policy was purchased in 1973. The yearly premium was fixed at $1,492.50 for 43 years. The policy is referred to as a limited payment life policy. Debtors have paid all the regular premiums provided for under the policy. In 1981, debtor borrowed against the policy's cash surrender value, investing the loan proceeds in his business known as Johnson Furniture Company which ceased operations in or around February, 1986.

In December, 1986, debtors obtained a loan with Beneficial Mortgage Company secured by a second trust deed on their home. This loan reduced the equity in their home to an amount within the allowed homestead exemption. Part of the proceeds from this loan were used to pay off an existing second trust deed on the home which was then due and payable. In addition, on January 22, 1987, debtors used part of the loan proceeds to repay the life insurance policy loan to Prudential in the sum of $13,560.48. On January 24, 1987, debtor, Stanley Summers, changed the beneficiary of the policy from his wife, Dianne, to his adult children, Pamela and Jeffrey Summers. All of these actions were undertaken upon the advice of debtors' counsel.

Debtors admit that their only purpose and intent in repaying the loan against the cash value of the policy was to transfer

certain nonexempt funds derived from the refinancing of their home into exempt assets in the form of cash surrender value in the policy.

Debtors' financial circumstances did not materially change between January 22, 1987, the date on which the insurance loan was repaid and January 28, 1987, the date they filed their Chapter 7 petition.

The trustee has indicated that the anticipated value of assets in this case, other than any recovery which may be derived from the policy, amount to $4,971.

The debtors have scheduled unsecured claims in this case in the amount of $157,673.91.

## ISSUES

The pertinent statute is O.R.S. 743.099. The full text of this statute is as follows:

**O.R.S. 743.099 Exemption of proceeds, individual life insurance other than annuities.**

(1) When a policy of insurance is effected by any person on any person's own life or on another life in favor of some person other than that person having an insurable interest in the life insured, the lawful beneficiary thereof, other than that person or that person's legal representative, is entitled to its proceeds against the creditors or representatives of the person effecting the policy.

(2) The person to whom a policy of life insurance is made payable may maintain an action thereon in the person's own name.

(3) A policy of life insurance payable to a beneficiary other than the estate of the insured, having by its terms a cash surrender value available to the insured, is exempt from any execution issued from any court in this state and in the event of bankruptcy of such insured is exempt from all demands in legal proceeding under such bankruptcy.

(4) Subject to the statute of limitations, the amount of *any premiums paid in fraud of creditors* for such insurance, with interest thereon, shall inure to their benefit from *the proceeds* of the policy. The insurer issuing the poli-

cy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms unless, before such payment, the insurer has received at its home office written notice by or in behalf of some creditor, with specifications of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors. (emphasis added)

(5) The insured under any policy within this section shall not be denied the right to change the beneficiary when such right is expressly reserved in the policy.

(6) This section does not apply to annuity policies. [Formerly 739.405]

The debtors rely upon O.R.S. 743.099(3) (subsection 3). The trustee, while conceding the exemption provided for in subsection 3, maintains that the debtors' "loan repayment" on the eve of bankruptcy constitutes a payment of premiums in fraud of creditors as provided for in O.R.S. 743.099(4) (subsection 4). In short, the trustee argues that subsection 4 creates an exception to the exemption provided for in subsection 3. Accordingly, the debtors' exemption should be disallowed to the extent of the loan repayment in this case. In determining whether or not the loan repayment is within the purview of subsection 4, this court must resolve the following three issues:

1. Is the repayment of a life insurance policy loan equivalent to the payment of premiums?

2. If so, was the payment, in this case, "in fraud of creditors"?

3. If it was, is the policy's cash surrender value included within the term "proceeds" so as to enable the trustee to require a turnover of the fraudulent payments from this fund or must he wait until the insured dies, or the policy otherwise matures?

All three of these questions appear to be of first impression in Oregon. Subsections 3 and 4 remain in their original form as enacted by the Oregon Legislature in 1917. Gen. Laws of Oregon, 1917, Chapt. 203,

124

§ 24–m. This court has found no legislative history to aid it in its determination.

## DISCUSSION

### 1—Policy Loan Repayment as Premiums.

■ Debtors argue that repayment of a policy loan does not equate to a payment of premiums under subsection 4 because the Oregon statutory insurance scheme clearly distinguishes between the two concepts. (O.R.S. 743.156 to O.R.S. 743.247.) The trustee maintains that the policy loan value accrues as premiums are paid. Repayment of a loan is a replacement of these premiums.

That portion of the Oregon Insurance Code relied upon by debtors consists of regulatory statutes as they relate generally to individual life insurance policies and annuities. Among other details, they provide that a life insurance policy issued in the State of Oregon must provide the following:

1. A separate statement stating the premium for each benefit provision of the policy in terms of disclosure (O.R.S. 743.-156);

2. A provision relating to the time and place of payment of premium (O.R.S. 743.162);

3. A grace period (O.R.S. 743.165);

4. Where a life insurance policy accrues a cash surrender value and the payment of premiums are not in default beyond any grace period, the insurer is required to advance, on the sole security of the policy, an amount up to the cash surrender value or loan value of the policy at the request of the insured subject to certain conditions (O.R.S. 743.186);

5. The interest rates to be charged on "policy loans" are regulated (O.R.S. 743.-187);

6. Certain nonforfeiture provisions for certain types of life insurance policies (O.R.S. 743.204, 743.207);

7. Regulations for determining the amount of cash surrender value of appropriate life insurance policies (O.R.S. 743.-210);

8. Determination of paid up nonforfeiture benefits (O.R.S. 743.213); calculation of adjusted premiums (O.R.S. 743.-215); adjusted premiums in certain policies (O.R.S. 743.216); and future premium amounts (O.R.S. 743.218);

9. Additional rules for calculating nonforfeiture benefits and cash surrender values upon default in premium payment in certain policies (O.R.S. 743.219 and 743.221); and

10. Additional rules concerning benefits, premiums, certain prohibited provisions, variable life policy provisions and other matters.

Thus, the above statutes place certain requirements upon insurers, provide certain minimum benefits for insureds and give certain options to the parties to a life insurance policy as to what provisions must be contained therein.

In essence, insurance premiums consist of two parts. One part, the "net premium" is allocated to the cost of carrying the risk for the premium period, the excess, or "loading" consists of overhead expenses, a reserve for contingencies, and in some cases, profits. *State of Oregon v. Allstate Insurance Co.*, 221 Or. 371, 351 P.2d 433, (1960). The contingency reserve fund comprises the cash surrender, or loan value of the policy. *Jansen v. Tyler*, 151 Or. 268, 49 P.2d 372 (1935). It makes nonforfeiture provisions possible as it comprises, in essence, the premium used to pay for extended or paid-up insurance upon default by the insured. *U.S. v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

The insured may "borrow" against this reserve, as in this case, but the "loan" is secured only by the reserve.

O.R.S. 743.186(1) provides in pertinent part as follows:

A life insurance policy shall contain a provision that after three full years' premiums have been paid and after the policy has a cash surrender value and while no premium is in default beyond the grace period for payment, the insurer *will advance, ... on the sole security thereof,* an amount equal to or at the option of the party entitled thereto, less

than the loan value of the policy, at a rate of interest not exceeding the maximum rate permitted by the policy loan provision. The interest rate provision shall comply with O.R.S. 743.187. *The loan value of the policy shall be equal to the cash surrender value* at the end of the then current policy year, less any existing indebtedness not already deducted in determining such cash surrender value including any interest then accrued but not due, any unpaid balance of the premium for the current policy year, and interest on the loan to the end of the current policy year.... (emphasis added)

The Oregon Supreme Court has stated:

A policy loan is made upon the sole security of the policy of insurance, and, when made, it does not create the ordinary relation of debtor and creditor between the insurance company and the insured. It is an advancement on the policy without a personal obligation as to repayment.... It is in the nature of a withdrawal of the reserve protanto, as under the terms of the contract the insured is entitled at any time to demand and receive a loan, and he alone has the option of deciding whether he will ever repay it or not.

*Jansen v. Tyler, supra,* 49 P.2d at 373.

If the insured elects to repay the "policy loan", such repayment constitutes a dollar for dollar increase in the reserve value (cash surrender value or loan value) of the policy which is normally established by the payment of premiums. Accordingly, for the purpose of applying subsection 4, this court concludes that the repayment of a life insurance policy loan constitutes the payment of premiums.

### 2—Payment in Fraud of Creditors.

Debtors contend that even if the loan repayment is considered as payment of premiums, such a payment cannot be considered to be "in fraud of creditors" as required by subsection 4, hence, subsection 4 does not apply. Debtors rely on *Milwaukie Construction Co. v. Glens Falls Insurance Co.,* 389 F.2d 364 (9th Cir.1968), a prior decision by this court, *In re McAlis-*

*ter,* 56 B.R. 164 (Bankr.D.Or.1985) and *Jansen v. Tyler, supra.* This reliance is misplaced.

In *Milwaukie Construction Co. v. Glens Falls Insurance Co., supra,* appellants were ordered to specifically perform a contract of indemnity. In that regard, four life insurance policies were ordered to be deposited with the Clerk of the Court and were later allowed to be withdrawn by Glens Falls Insurance Co. On appeal, the Ninth Circuit Court of Appeals held that the exemption provided for in O.R.S. 743.-099 applied. The court held that the term "execution" is broad enough to include an order directing delivery of the insurance policies and such an order could defeat the purpose of the exemption statute. Appellants could not be required to surrender a life insurance policy as part of the performance of an indemnity contract. There was no discussion of subsection 4 in that case.

In *McAlister, supra.,* a husband and wife had filed a joint bankruptcy petition. Thereafter, the husband died and the wife received death benefits as the beneficiary under a life insurance policy insuring his life. She then sought to claim the death benefits as exempt under O.R.S. 743.099. This court held that while the beneficiary might be entitled to receive the death benefits free from the claims of the insured's creditors, there was nothing contained in the statute (O.R.S. 743.099) to provide that the death benefits would be exempt from the claims of the beneficiary's creditors. Accordingly, the life insurance proceeds could not be claimed as exempt in the wife's bankruptcy estate. No issue was raised concerning the application of subsection 4 and there was no discussion of subsection 4 in that case.

In *Jansen v. Tyler, supra,* the insurance premiums had been paid with funds that had been misappropriated. Debtors conclude that since no such misappropriation has occured in this case, that there has been no payment in fraud of creditors. No such conclusion is supported by a review of the opinion in that case.

Debtors maintain that they were merely maximizing their statutory exemptions by

transferring nonexempt equity in their home into the cash surrender value in the policy by making the policy loan repayment on the eve of bankruptcy. They argue that this form of pre-bankruptcy planning should be permitted as exemptions should be broadly construed. The trustee admits that, in most instances such planning is valid, but here, the Oregon Legislature has restricted such transfers by enacting subsection 4.

■ Generally, a debtor's conversion of nonexempt property to exempt property on the eve of bankruptcy is not fraudulent *per se.* *Daniel v. Security Pacific National Bank, (In re Daniel),* 771 F.2d 1352 (9th Cir.1985); *Love v. Menick, (In re Love),* 341 F.2d 680 (9th Cir.1965). Extrinsic evidence of fraud must be present to invalidate the exemption. In order to evaluate such extrinsic evidence, courts interpreting state insurance exemption statutes with limitations similar to subsection 4's, have generally fashioned their own "badges of fraud" as related to life insurance policy payments. In *In re Mehrer,* 2 B.R. 309 (Bankr.E.D.Wa.1980), the court announced a comprehensive list of such indications as follows:

Among the circumstances which, if present, would lead this Court to the unmistakable conclusion that the bankrupt intended to defraud his creditors by buying life insurance on the eve of bankruptcy are the following:

(1) whether there was fair consideration paid for the life insurance policy;

(2) whether the bankrupt was solvent or insolvent as a result of the transfer or whether he was insolvent at the time of the transfer;

(3) the amount of the policy;

(4) whether the bankrupt intended, in good faith, to provide by moderate premiums some protection to those to whom he had a duty to support;

(5) the length of time between the purchasing of a life insurance policy and the filing of the bankruptcy;

(6) the amount of non-exempt property which the debtor had after purchasing the life insurance policy;

(7) the bankrupt's failure to produce available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition. *Id.* at 312.

Further, the *Mehrer* court distinguished between exemption statutes which restrict premium payments in fraud of creditors from exemption statutes without these restrictions.

*Mehrer* and the cases that have followed its reasoning have generally found that transfers made on the eve of bankruptcy violate the particular state insurance exemption statute being construed. *Peoples State Bank and Trust Co. v. Sayler, (In re Sayler),* 68 B.R. 111 (Bankr.D.Kan. 1986); *In re Mueller,* 71 B.R. 165 (D.Kan. 1987); and *In re Wallace,* 30 B.R. 5 (Bankr.C.D.Ill.1983).

The cases which reach a contrary result are usually concerned with state exemption statutes not containing the "in fraud of creditors" restriction. *First National Bank of Beresford v. Johnson, (In re Johnson),* 8 B.R. 650 (Bankr.D.S.D.1981) (The exemption was allowed, but the state statute contained a $20,000 limit and no "in fraud of creditors" language.); *Ernest v. O'Brien, et al., (In re O'Brien),* 67 B.R. 317 (Bankr.N.D.Iowa 1986) (The exemption survived an attack under 11 U.S.C. § 548, but, the state statute had no "in fraud of creditors" language.)

Debtors argue that they were merely following the advice of their attorney in their attempts to maximize their exemptions. In *In re Sayler, supra,* the court pointed out that "... the word 'fraud' or 'defraud' in this context, does not require some ulterior motive or chicanery. Rather, it is intended as a term of art to allow recovery of certain types of transfers." 68 B.R. at 120. This court agrees with that analysis.

This court adopts the various factors or "badges of fraud" as announced by the court in *Mehrer* for the purpose of determining whether or not the payment of any insurance premium should be considered to

have been paid "in fraud of creditors" for the purposes of subsection 4.

Applying those factors here, this court finds that debtors were admittedly insolvent at the time of the repayment of the policy loan, they admit that the sole purpose for making the repayment was to shelter assets from creditors and to maximize exemptions, not to protect their dependents, the repayment was made just six days before the bankruptcy filing, and after the repayment, debtors were left with less than $5,000 in nonexempt assets to satisfy scheduled unsecured claims in excess of $150,000. Accordingly, this court concludes that the policy loan repayment was in fraud of creditors for the purpose of applying subsection 4.

### 3—Cash Surrender Value as Policy Proceeds.

■ Debtors argue that even if the policy loan repayment is viewed as a payment of premiums and this transfer was in fraud of creditors, the trustee still has no present remedy as the statute only provides for a recovery from the "proceeds" of the policy. At issue is the scope of the term "proceeds" as used in subsection 4. Once again, debtors rely upon *In re McAlister, supra.*, for the proposition that this court has distinguished between life insurance proceeds payable to beneficiaries under the policy and the cash surrender value of a life insurance policy. It is the debtors' position that the term "proceeds" as used in subsection 4 does not include any cash surrender value, but only those payments made on death of the insured or other maturation of the policy.

In *In re McAlister*, this court plainly stated that: "The cash surrender value of the life insurance policy is not an issue in this case." 56 B.R. at 166. Accordingly, debtors' reliance upon *McAlister* is misplaced.

The courts which have considered similar statutes are split as to whether the term "proceeds" includes the cash surrender value of an insurance policy. Compare, *In re Goodchild,* 10 F.Supp. 491 (E.D.N.Y.1935) (allowing cash surrender value as proceeds); and *U.S. v. Bess, supra.*, (the term "proceeds" encompasses cash surrender value for tax lien purposes), with *Greimen v. Metropolitan Life Insurance Co.*, 96 F.2d 823 (3rd Cir.1938); and *Doethlaff v. Penn Mut. Life Ins. Co.*, 117 F.2d 582 (6th Cir.1941) (the cash surrender value is not included within the term "proceeds").

Those courts which exclude the cash surrender value from the term "proceeds" reason that insurance proceeds do not arise until the insured's death or until the policy matures in some other way. This court declines to follow that reasoning. A policy's cash surrender or loan value constitutes a part of its proceeds. If any policy loan is outstanding at the insured's death, the loan amount is deducted from the "proceeds" payable to the beneficiary. Any cash surrender value existing at death is merged into the greater values which the insurer is obligated to pay. *U.S. v. Bess, supra.* Further, any loan on the policy made from this cash surrender value is considered an advancement on the policy proceeds. *Jansen v. Tyler, supra.*

In addition, this court assumes that the Oregon Legislature intended that defrauded creditors have an effective remedy. If cash surrender values are excluded from the term "proceeds", a defrauded creditor would have to wait until the insured's death or other maturation of the policy to be paid. Furthermore, if "proceeds" do not arise until death or other maturation, then a debtor can easily defeat a defrauded creditor's claim by cashing in his policy, thereby eliminating any "proceeds". In order to enforce subsection 4, defrauded creditors must have a present remedy.

Accordingly, it follows that the trustee's objection to the debtors' claimed exemption in the cash surrender value of the Prudential life insurance policy should be sustained to the extent of $13,560.48. Any remaining cash surrender value in that policy should be allowed as exempt. In addition, the trustee's objection, if any, to the debtors' claimed exemption in the cash surrender value of the Standard life insurance policy should be overruled and that exemption allowed.

This opinion shall constitute the court's findings of fact and conclusions of law; they shall not be separately stated.