In re Arlin Joe MUELLER,
Debtor-Appellant.

Civ. A. No. 86–1795–K.

United States District Court,
D. Kansas.

March 11, 1987.

Donald B. Clark, Wichita, Kan., for debtor-appellant.

Martin R. Ufford, Wichita, Kan., for trustee-appellee.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is an appeal by the debtor, Arlin Joe Mueller, from the bankruptcy court's order sustaining the trustee's objection to debtor's claim of exemption of a certain life insurance policy. This court has jurisdiction pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8001.

In reviewing the bankruptcy court's decision, the court is mindful of the applicable standard of review. Bankruptcy Rule 8013 provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. *Findings of fact shall not be set aside unless clearly erroneous,* and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

(Emphasis added).

In *In re Branding Iron Motel, Inc.,* 798 F.2d 396 (10th Cir.1986), the Tenth Circuit Court of Appeals affirmed that "the district court ... must accept the factual findings of the bankruptcy court unless they are clearly erroneous ... [However] [i]t is appropriate for the district court to review *de novo* the bankruptcy court's legal determinations...." 798 F.2d at 399–400.

When reviewing factual findings, the district court is not to weigh the evidence or reverse the finding because it would have decided the case differently. *Id.* at 400. A trial court's findings may not be reversed if its perception of the evidence is logical or reasonable in light of the record. "The bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *In re Reid,* 757 F.2d 230, 233–34 (10th Cir.1985), quoting

*Kansas Federal Credit Union v. Niemeier*, 227 F.2d 287, 291 (10th Cir.1955). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Campbell v. Campbell*, 198 Kan. 181, 187, 422 P.2d 932 (1967).

■ Additionally, a bankruptcy court's finding of fraudulent intent on the part of a debtor is a finding of fact, rather than a conclusion of law, and so may be reversed only if clearly erroneous. *See Credit Union of America v. Myers*, 234 Kan. 773, 780, 676 P.2d 99 (1984).

The bankruptcy court made the following findings of fact:

1. The debtor is a farmer and part-time truck driver living near Hope, Kansas.

2. The debtor is divorced and shares the custody of his 11–year-old daughter with his ex-wife.

3. Sometime in late 1985 or early 1986, the debtor consulted his counsel, Mr. Donald Clark, about a possible bankruptcy filing.

4. As of late 1985, the debtor owned two life insurance policies—one, Aid to Lutherans, another with New York Life Insurance, both having face values of $50,000.00 each.

5. Neither of the policies was pledged nor secured in any manner.

6. The New York Life Insurance policy was cashed in due to the debtor's inability to make premium payments.

7. The debtor understands the distinction between "term" and "whole life" insurance policies.

8. In early January of 1986, the debtor decided to obtain an additional life insurance policy to insure his minor daughter's education.

9. The debtor contacted Robert Laing, a Wichita life insurance agent.

10. The debtor formally applied for the life insurance with Mr. Laing on January 14, 1986.

11. The debtor signed his completed schedules and statement of affairs for the filing of a voluntary bankruptcy on January 17, 1986, and the petition schedules were filed with the U.S. Bankruptcy Court for the District of Kansas on January 21, 1986.

12. The debtor, contemporaneously with the execution of the application to Mr. Laing, tendered the sum of $7,500.00 in return for the issuance of a life insurance policy in the face amount of $50,-000.00. The policy was issued on January 16, 1986.

13. The debtor used funds from various sources to make payment for the acquisition of the life insurance.

14. The debtor was insolvent as of the date that he applied for the life insurance policy on January 14, 1986, and on the date of the filing of his bankruptcy on January 21, 1986.

15. The debtor, in making the payment for the life insurance policy, disposed of his last nonexempt asset subject to the claims of creditors.

16. There is some minor machinery, but it does not appear there are any substantial assets for the trustee to administer.

17. It is not clear whether the payment for the life insurance policies was made in cash or by other means.

18. The debtor was in good health because he listed no particular health problems in the life insurance application.

19. The beneficiary listed in the life insurance policy was not the debtor's daughter, exclusively, but the "then living children of the insured, and the then living children of any child of the insured who is not then living, per stirpes."

The bankruptcy court concluded that the life insurance policy was nonexempt under K.S.A. 40–414(b)(1), which provides that life insurance policies obtained within one year before bankruptcy with the intent of defrauding creditors are an exception to the usually exempt status of such policies. In finding fraud, the bankruptcy court considered "the debtor's insolvency, the debt-

or's intention to provide insurance, the time factor [proximity between obtaining policy and filing bankruptcy], and the other non-exempt assets."

On appeal, the debtor first argues that the bankruptcy court incorrectly interpreted K.S.A. 40–414. K.S.A. 40–414 provides, generally, that a debtor's life insurance policies are to be free from the claims of the insured's creditors. Prior to 1984, there were no statutory exceptions to this exemption. However, in 1984 the statute was amended to add the following:

(b) The nonforfeiture value of a life insurance policy shall not be exempt from:

(1) Claims of the creditors of a policyholder who files a bankruptcy petition under 11 U.S.C. § 101 et seq. on or within one year after the date the policy is issued if the policy was obtained by the debtor for the purpose of defrauding one or more of the debtor's creditors;

In the case at bar, the bankruptcy court determined that § (b)(1) applied as an exception to the debtor's claimed exemption. On appeal, the debtor argues that by finding (b)(1) applied when the life insurance policy was not purchased with assets in which any creditor held a "peculiar equity," the court misinterpreted the exception to liability.

The debtor's argument is based on Kansas case law which, he contends, is now incorporated into K.S.A. 40–414. A brief review of the case law prior to the 1984 amendment is warranted.

An analysis of the development of the law in this area must begin with the understanding that the primary purpose of the bankruptcy law is to give the debtor a "fresh start"—free from creditor harassment and excessive debt. To achieve this purpose, the bankruptcy laws provide for discharge of indebtedness and allow the debtor certain exempt property so he will have the basic necessities of life and a means to achieve economic rehabilitation. 1 Bankr.Serv.L.Ed. § 1.31 (Rev.Ed.1985). Thus, exemption laws are to be construed liberally in favor of exemption. *In re Cycyk,* 29 B.R. 722 (Bankr.N.D.Ohio 1983).

In Kansas, the exemption of life insurance is codified in K.S.A. 40–414. Further, it is well settled by case law that an insolvent debtor may successfully assert a claim of exemption even though the exempt property was purchased with nonexempt funds. *McConnell v. Wolcott,* 70 Kan. 375, Syl. ¶ 2, 78 P. 848 (1904). The only exception recognized is that a debtor may not place property out of the reach of a creditor who has a "peculiar equity" in the assets converted to exempt property. A "peculiar equity" exists when the funds used were either fraudulently procured from the creditor or the creditor had a lien on the assets, or property sold or used to procure the exempt property. *Metz v. Williams,* 149 Kan. 647, 88 P.2d 1093 (1939). This exception was judicially developed for application where a creditor challenged the conversion of nonexempt assets into exempt assets as a "fraudulent conveyance."

The debtor argues that the 1984 amendment to K.S.A. 40–414 does not change the "peculiar equity" requirement. The debtor relies on Judge Pusateri's reasoning in *In re Barash,* 69 B.R. 231 (Bankr.D.Kan. 1984), wherein he stated:

*This result is not altered by the 1984 amendment to K.S.A. 40–414* which states that the insurance exemption is not available when the policyholder files bankruptcy within one year of issuance of the policy if the policy was obtained by the policyholder for the purpose of defrauding one or more of his creditors.... The inclusion of the last clause in the statute defeats any presumption of fraud that the legislature may have intended by the first clause, and has the effect of ratifying the existing case law.

(Emphasis added).

This court cannot agree with Judge Pusateri's interpretation that the peculiar equity requirement continues to exist under K.S.A. 40–414(b)(1). Rather, this court is persuaded by Judge Morton's reasoning in *In re Washburn,* No. 86–1420 (Bankr.D. Kan. Apr. 29, 1986) (appeal pending before Judge Crow). Judge Morton stated in part:

It is presumed that the legislature, in amending a statute, acts with full knowledge and information as to the subject matter of the statute, as to prior and existing legislation on the subject of the statute, and as to judicial decisions with respect to prior and existing law. *State v. Coley*, 236 Kan. 672, 694 P.2d 479 (1985); *City of Lenexa v. Board of County Commissioners of Johnson Co.*, 237 Kan. 782, 703 P.2d 800 (1985); *In re Ray*, 26 B.R. 534 (Bankr.D.Kan.1983) (Pusateri, J.). Furthermore, in determining legislative intent for purposes of statutory construction, any changes and additions made in existing legislation raises a presumption that a change in meaning and effect was intended. *State v. Dubish*, 234 Kan. 708, 675 P.2d 877 (1984); *In re Ray, supra.* Finally there is a presumption that the legislature did not intend to enact useless or meaningless legislation. *City of Olathe v. Board of Zoning Appeals*, 10 Kan.App.2d 218, 696 P.2d 409 (1985).

In view of the above standards of statutory construction, the Court cannot accept debtor's view that the amendment to KAN.STAT.ANN. § 40–414 merely codified the preexisting law. While subsection (a) ¶¶ (1) and (2) are very similar to the old statute, subsection (b) ¶¶ (1) and (2) are entirely new. Subsection (b) sets forth only two exceptions when the value of a life insurance policy is not exempt from creditors. Further, by expressly, mentioning these two exceptions the legislature has impliedly excluded all others. As a general principle of statutory construction, if a statute specifies one or two exceptions to the general application, other exceptions are excluded. *U.S. v. Jones*, 56[7] F.2d 965 (10th Cir.1977); *State v. Wood*, 231 Kan. 699, 647 P.2d 1327 (1982).

. . . .

[T]he amendment does not create a presumption of fraud when nonexempt property is converted to exempt property on the eve of bankruptcy. The creditor must show that the policy was obtained "for the purpose of defrauding" the debtor's creditor. However, while both paragraphs (1) and (2) of subsection (b) are limited to one year from the issuance of the policy, the provisions are not limited to any certain type of creditor. *In other words, any creditor, with or without a "peculiar equity," may attack the issuance of the policy if the creditor can show that it was obtained for the purpose of defrauding creditors.*

(Emphasis added).

Judge Morton's thoughtful interpretation of K.S.A. 40–414(b)(1) is sound and will be followed by this court. Judge Pearson, in the case at bar, correctly applied the (b)(1) exception even though no creditor held a "peculiar equity" in assets used to purchase the life insurance policy.

The debtor next argues that the bankruptcy court erred in finding he purchased the life insurance policy with an intent to defraud his creditors. Without such an intent, 40–414(b)(1)'s exception to exemption does not apply.

In *Matter of Mehrer*, 2 B.R. 309 (E.D. Wash.1980), the court identified certain circumstances to be considered in determining whether an insurance policy, acquired on the eve of bankruptcy, was purchased with an intent to defraud creditors. These circumstances are: (1) whether there was a fair consideration paid for the life insurance policy; (2) whether the debtor was solvent or insolvent as a result of the transfer or whether he was insolvent at the time of the transfer; (3) the amount of the policy; (4) whether the debtor intended, in good faith, to provide by moderate premiums some protection to those to whom he had a duty to support; (5) the length of time between the purchasing of a life insurance policy and the filing of the bankruptcy; (6) the amount of nonexempt property which the debtor had after purchasing the life insurance policy; and (7) the debtor's failure to produce available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition.

In this case, the bankruptcy court found: (1) the debtor was insolvent when he purchased the life insurance; (2) the life insur-

ance was purchased just one week prior to the debtor's filing for bankruptcy; (3) the debtor used his last nonexempt assets to purchase the insurance; (4) the debtor had two other unencumbered life insurance policies; and (5) although the debtor contends he purchased the policy to provide for his daughter's education, the named beneficiaries are the "then living children of the insured, and the then living children of any child of the insured who is not then living, per stirpes."

Although the debtor takes issue with the bankruptcy court's findings that the debtor disposed of his last nonexempt assets in acquiring the policy, that the other insurance policies were unencumbered, and that the debtor's true intent in acquiring the policy was other than as he has stated, the debtor has made no showing that any of these findings are "clearly erroneous."

The debtor also argues that at least six of the seven *Mehrer* criteria *must* be present to support a finding of fraud. However, there is no such requirement. There simply must be sufficient indicia of fraud to rise to the level of clear and convincing evidence. As observed by the Kansas Supreme Court in *Koch Engineering Co. v. Faulconer*, 239 Kan. 101, 107, 716 P.2d 180 (1986):

> Badges of fraud are circumstances frequently attending conveyances and transfers intending to hinder, delay or defraud creditors. They are red flags, and when they are unexplained in the evidence, they must warrant an inference of fraud. Some are weak; others are strong. One weak badge of fraud, standing alone, would have little evidentiary value in establishing a fraudulent conveyance.... On the other hand, the concurrence of several badges of fraud are said to make out a strong case.

Thus, in a case such as the one at bar, the mere fact that the debtor converted nonexempt property to exempt property on the eve of bankruptcy would be insufficient to support a finding of fraudulent intent. *See Ford v. Poston*, 773 F.2d 52 (4th Cir.1985). However, when this fact is coupled with other "badges" of fraud, a finding of fraud is clearly warranted.

In this case, the bankruptcy court, after hearing and evaluating the evidence and judging the credibility of witnesses, found that the quantum and quality of the "badges" of fraud established by the trustee rose to the level of clear and convincing proof of fraudulent intent. After reviewing the record herein, this court is convinced the finding is supported by substantial competent evidence, and is not "clearly erroneous."