In re Jerome SAYLER, Margaret Elaine Sayler, Debtors.

PEOPLES STATE BANK AND TRUST COMPANY, Plaintiff,

v.

Jerome SAYLER; Margaret Elaine Sayler; and Lynn D. Allison, Trustee, Defendants.

Bankruptcy No. 85–11742.
Adv. No. 86–0024.
Civ. No. 88–1505–K.

United States District Court, D. Kansas.

March 17, 1989.

Mark D. Calcara, Watkins, Calcara & Rondeau, Great Bend, Kan., For American State Bank & Trust Co., Great Bend.

Ernest McRae, McRae & Early, Wichita, Kan., for Jerome Sayler and Margaret Elaine Sayler.

Lynn E. Allison, Wichita, Kan., for Lynn D. Allison.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is an appeal by the debtors, Dr. Jerome Sayler and Margaret Sayler, from the bankruptcy court's ruling sustaining the trustee's and creditors' objections to the exemption of the cash values of certain life insurance policies purchased by Dr. Sayler. This is the second appeal to this court by the debtors herein. In the first appeal, as in the instant case, the debtors sought reversal of the bankruptcy court's order sustaining the objections to the debtors' claim of exemption of the insurance policies. This court held, *inter alia*, that the bankruptcy court employed an erroneous legal standard in finding Dr. Sayler had "fraudulent intent" in purchasing the life insurance policies. The court thus reversed and remanded the case to the bankruptcy court and directed the court to make findings of fact with respect to each of the "badges of fraud" as set forth by this court in *In re Mueller*, 71 B.R. 165, 168 (D.Kan.1987), and to determine whether the debtors' circumstances gave rise to clear and convincing evidence of fraud. *In re Sayler*, 98 B.R. 536, 541 (D.Kan.1987).

On remand, the bankruptcy court considered each of the "badges of fraud," and found clear and convincing evidence that Dr. Sayler intended to defraud his creditors

when he purchased the insurance policies within 12 months of the filing of the debtors' bankruptcy petition. Debtors now urge this court to reject the bankruptcy court's findings as clearly erroneous.

The debtors' appeal has been consolidated with the cross-appeal of the American State Bank & Trust Company, creditor. American State Bank argues the bankruptcy court improperly limited the creditors' recovery to the "cash value" of the policies instead of sustaining the objection to exemption of the "nonforfeiture value" of the policies, as provided in K.S.A. 40–414.

The facts of this case were set out in some detail in the court's previous opinion and for reference purposes are quoted in full here.

Jerome Sayler is a medical doctor in Great Bend, Kansas, and at all relevant times hereto was a principal and stockholder in Central Kansas Pathological Associates, Chartered. In 1985, he was a beneficiary, and designated trustee, of two ERISA qualified plans ("plans"). On June 1, 1985, pursuant to the terms of the plans, Dr. Sayler withdrew all of his vested benefits totaling $585,000.00. At that time, lawsuits were pending against him for collection on debts he owed to the American State Bank, the Security State Bank, and the Peoples State Bank, for a total of $850,000.00. Dr. Sayler was hopelessly insolvent in that his liabilities substantially exceeded his assets and he was generally not paying his obligations as they became due.

As of June 1, 1985, when Dr. Sayler began withdrawing his vested plan benefits, he was the owner of, and insured under, eleven insurance policies with a total cash value of $291,649.53, and with a face value of $1,190,300.00. Two of these policies were USF & G term policies which the debtor had taken out in 1978. Under the terms of these policies, Dr. Sayler was required to convert the term policies to universal policies when he reached the age of 65. Because he turned 65 in July of 1985, he paid the premiums and converted the policies on May 20, 1985.

Prior to withdrawing his ERISA fund benefits, Dr. Sayler began consulting with Robert Laing, an agent for Southwestern Life Insurance Company. Dr. Sayler was advised of the decision *In re Threewit* [*Threewitt*], 24 Bankr. 922 [927] (D.Kan.1982), in which this court found that a qualified ERISA plan was excluded from the bankrupt's estate because of the spendthrift-type provisions in the trust of the bankrupt's ERISA plan. Dr. Sayler discussed this case with Mr. Laing and with his attorney. He was advised that because both ERISA plans and insurance policies were exempt in bankruptcy proceedings, he should purchase insurance because he would receive a better return, his taxes would be paid in a lump sum after which his wife would receive insurance proceeds income tax free, and the dividends would pay the premiums so long as interest rates remained at some rate over 4%. Mr. Laing, on behalf of Southwestern Life Insurance Company, offered what is known as a universal insurance policy which permits the payment of a substantial single premium, which is then invested by the insurance company and the income used to pay future premiums. Dr. Sayler discussed the alternatives of a policy with a smaller face value which would have been paid in full. He also discussed the investment opportunities represented by the insurance policy and understood fully that any investment income was sheltered by the life insurance tax rules.

On or about June 1, 1985, Dr. Sayler withdrew his ERISA funds and proceeds to: (1) pay approximately $200,000.00 in taxes on the lump sum distribution of the plan funds; (2) pay off the mortgage on his home and remodel his homestead; (3) purchase two new automobiles; (4) purchase miscellaneous household goods; (5) pay accounting and legal fees; (6) pay off all or part of loans in existing insurance policies; (7) pay off a personal loan at a bank; and (8) convert two existing USF & G term policies, purchased in 1978, to universal policies with effective dates of May 3 and May 20, 1985. With the balance of the proceeds from the

withdrawal of the plan funds, Dr. Sayler made payments to Southwestern Life Insurance Company for a policy with a face amount of $350,000.00 and a cash value of approximately $166,000.00. The beneficiary of this policy was Mrs. Sayler.

Dr. Sayler and his wife filed their petition for relief under Chapter 7 on September 18, 1985. This was approximately 5½ months after the Southwestern Life Insurance Company policy was issued.

On November 29, 1985, the trustee filed his objection pursuant to K.S.A. 40–414 to the debtors' claimed exemption of the Southwestern Life Insurance Company policy. Shortly thereafter, creditors of the debtors, including the Peoples State Bank & Trust Company, filed objections to the claimed exemption of both the Southwestern Life policy and the two USF & G policies which were converted in 1985.

A trial was held to the bankruptcy court, and upon completion thereof the court found that the USF & G policies and the Southwestern Life policy were issued within one year of the filing of bankruptcy with the intent to defraud creditors. The court thus concluded, pursuant to K.S.A. 40–414, that the policies were nonexempt. From this finding, the debtors brought their appeal.

As earlier noted, this court reversed and remanded the case to the bankruptcy court with directions to consider whether the debtors' circumstances constituted "clear and convincing" evidence of the debtors' intent to defraud creditors. The bankruptcy court so found, and the debtors again appeal to this court.

In reviewing the findings of the bankruptcy court, this court may set aside findings of fact only if they are clearly erroneous. Conclusions of law, however, are subject to *de novo* review. *In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir.1988); *In re Herd*, 840 F.2d 757, 759 (10th Cir.

1988). Because the question of whether the debtors intended to defraud their creditors is a question of fact, *Credit Union of America v. Myers*, 234 Kan. 773, 780, 676 P.2d 99 (1984), the court must decide whether the bankruptcy court's findings with respect to this issue are clearly erroneous.

At the time the debtors filed their bankruptcy petition, K.S.A. 40–414 provided in pertinent part:

(a) If a life insurance company or fraternal benefit society issues any policy of insurance or beneficiary certificates upon the life of an individual and payable upon the death of the insured, or in any given number of years, to any person or persons having an insurable interest in the life of the insured, the policy and its reserves, or their present value, shall inure to the sole and separate use and benefit of the beneficiaries named in the policy and shall be free from:

(1) The claims of the insured or the insured's creditors and representatives;

. . . .

(b) The nonforfeiture value of a life insurance policy **shall not be exempt** from:

(1) Claims of the creditors of a policy holder who files a bankruptcy petition under 11 U.S.C. § 101 et seq. on or within one year after the date the policy is issued **if the policy was obtained by the debtor for the purpose of defrauding one or more of the debtor's creditors;**

(Emphasis added.) [1]

▮ Thus, under K.S.A. 40–414, life insurance policies are generally exempt from claims of the insured's creditors. An exception to that rule occurs, however, when the debtor purchases the insurance within one year of filing bankruptcy with the intent to defraud his creditors.

In the debtors' prior appeal, this court affirmed the bankruptcy court's determina-

---

1. The legislature subsequently amended K.S.A. 40–414 to provide that the nonforfeiture value of a life insurance policy is nonexempt from claims of the creditors of a policyholder who files a bankruptcy petition within one year of the date the policy was issued. The statute no longer requires a showing that the policy was obtained by the debtor for the purpose of defrauding one or more of the debtor's creditors. *See* K.S.A. 40–414(b)(1) (1988 Supp.).

tion that the Southwestern Life policy, as well as the two USF & G policies, were "issued" within one year of bankruptcy. *In re Sayler*, 98 B.R. at 538–39. Therefore, the primary question remaining was whether Dr. Sayler acquired the policies for the purpose of defrauding his creditors. As to this question, the court found the bankruptcy court had applied an erroneous legal standard when it failed to analyze the fraud factors under the "clear and convincing" standard. This court therefore remanded the case to the bankruptcy court with directions to make findings of fact with respect to each of the "badges of fraud" identified in *Matter of Mehrer*, 2 B.R. 309 (E.D.Wash.1980), and reiterated by this court in *In re Mueller*, 71 B.R. at 168, as follows:

(1) whether there was a fair consideration paid for the life insurance policy; (2) whether the debtor was solvent or insolvent as a result of the transfer or whether he was insolvent at the time of the transfer; (3) the amount of the policy; (4) whether the debtor intended, in good faith, to provide by moderate premiums some protection to those to whom he had a duty to support; (5) the length of time between the purchasing of a life insurance policy and the filing of the bankruptcy; (6) the amount of nonexempt property which the debtor had after purchasing the life insurance policy; and (7) the debtor's failure to produce available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition.

As the bankruptcy court noted on remand, "while not all of the items on this checklist must be present, there must be sufficient indicia of fraud to rise to the level of clear and convincing evidence." *In Re Sayler*, 100 B.R. 57, 59 (Bankr., 1988).

The Tenth Circuit Court of Appeals recently affirmed *Mueller* and its application of the so-called "badges of fraud" test. *See In re Arlin Joe Mueller*, 867 F.2d 568, 570 (10th Cir.1989).

In determining whether the bankruptcy court's findings of fact are clearly erroneous, the court will consider the bankruptcy court's application of each of the above listed factors and the objections to that application posed by the debtors.

*Fair Consideration.*

The bankruptcy court determined that the first "indicia" of fraud—whether fair consideration was paid for the life insurance policies—is a neutral factor in this case as there is no evidence that Dr. Sayler paid more for the policies than necessary.

*Debtors' Solvency.*

As to the second factor, e.g., whether the debtor was solvent or insolvent as a result of the transfer or whether he was insolvent at the time of the transfer, the bankruptcy court concluded this factor also weighs against the debtors. The court found that on either a balance sheet or equity test basis, the debtor was hopelessly insolvent at the time of the purchase of the life insurance policies.

Debtor concedes that at the time of the transfer, he had personal financial obligations to American State Bank, Peoples State Bank, Security State Bank, and the Farmers State Bank, totaling some $1,297,-000.00, and that regardless of whether his ERISA funds were exempt or nonexempt, he was clearly insolvent.

The court agrees that this circumstance weighs against the debtor. It cannot be purely coincidental that the debtor, at a time when he admits to being clearly insolvent, withdrew his entire share of ERISA funds to purchase or pay for exempt items—including two new automobiles, house repairs and remodeling, a loan on an existing insurance policy, the mortgage loan on his homestead, and the purchase of three insurance policies.

*Amount of the Policy.*

The third factor to consider is the amount of the policy or policies. The bankruptcy court considered this factor in conjunction with the fourth factor—whether the debtor intended in good faith to provide by moderate premiums some protection to

those to whom he had a duty to support—and determined these factors, too, must weigh against the debtors.

Specifically, the bankruptcy court determined that prior to purchasing the challenged policies, Dr. Sayler had in force a face amount of life insurance in the amount of $990,000.00, with a total cash value of approximately $266,000.00. Yet, on the "eve of bankruptcy and while insolvent," he purchased an additional $770,000.00 in death benefits and cash values. 100 B.R. at 62. Most importantly, the bankruptcy court found that Dr. Sayler made no showing "that upon his demise he had to provide the rather extraordinary sums his existing policies would pay to his surviving spouse."

While debtors dispute the bankruptcy court's conclusion regarding the amount of life insurance held by Dr. Sayler prior to the acquisition of the challenged policies,[2] they do admit that following the purchase of the additional policies, Mrs. Sayler was entitled to more than $1 million in face value coverage upon the death of Dr. Sayler. Debtors contend on appeal that this amount was necessary in order for Mrs. Sayler to maintain the same lifestyle upon the death of her husband, yet they fail to point the court to any facts presented to the court below which would support their assertions.

Accordingly, the court finds the bankruptcy court's findings as to this issue are not clearly erroneous.

*Length of Time between Purchase of Life Insurance and Bankruptcy.*

The bankruptcy court concluded that the time frame within which Dr. Sayler purchased the life insurance and filed bankruptcy was also indicative of Dr. Sayler's intent to defraud his creditors. The court noted: "The purchase of the insurance with literally the last remaining unencumbered nonexempt assets less than seven weeks before the filing of the bankruptcy petition, strongly suggests an improper motive." At 62.

The court below also placed emphasis on the fact that the legislature has insulated policies issued more than one year prior to filing bankruptcy from the claims of creditors. Thus, the court reasoned any policies issued within one year are suspect. This conclusion is strengthened by the legislature's recent amendment of K.S.A. 40–414 to provide that any policy issued within one year of bankruptcy is automatically nonexempt, regardless of whether the debtor intended to defraud his creditors. K.S.A. 40–414(b)(1) (1988 Supp.)

The bankruptcy court's conclusion regarding the time frame within which the insurance was purchased and bankruptcy filed is supported by the evidence and is not clearly erroneous.

*Amount of Nonexempt Property Remaining After Debtor Purchased Insurance Policies.*

The bankruptcy court found this factor to be the "penultimate criteria" and concluded that "the debtor used his last nonexempt, unencumbered asset to purchase the life insurance policies before the court." At 62.

While the question of whether the ERISA funds withdrawn by the debtor would have been exempt or nonexempt had the debtor not withdrawn the funds is the subject of some disagreement, that factor is irrelevant here. It is undisputed that the debtor *did* withdraw those funds and used them primarily to purchase exempt assets, including the challenged life insurance policies. More importantly, it is not disputed that following these purchases the debtor had *no* remaining nonexempt assets and the debtor fully intended for this to be the result of his acquisitions.

*Debtor's Failure to Provide Available Evidence and to Testify With Significant Preciseness as to Pertinent Details of His Activities Shortly Before Filing the Bankruptcy Petition.*

The bankruptcy court determined that consideration of this final criterion "does

---

**2.** Debtors contend that at the "relevant time" they had face value coverage in the amount of $460,000.00. Had the bankruptcy court utilized this figure, it would have provided even more

convincing evidence of fraud since it would have meant that the debtors nearly tripled their face value coverage with the purchase of the additional insurance.

not clearly and convincingly suggest an improper motive." At 63. Neither party disputes this finding.

After stating its findings, the bankruptcy court concluded that "the objecting parties have, by clear and convincing evidence, shown that under the *Mehrer* criterion the debtor improperly intended to defraud his creditors by placing the ERISA funds in the life insurance policies." At 63.

Of the seven circumstances of fraud considered, the bankruptcy court found five strongly indicated an intent on the part of Dr. Sayler to defraud his creditors by purchasing the life insurance policies. These findings were supported by the evidence below and are not clearly erroneous. Accordingly, as in the *Mueller* case, this court concludes the bankruptcy court found sufficient "quantum and quality" of the various "badges of fraud" to support the finding of fraudulent intent.

### CROSS–APPEAL

In its cross-appeal, American State Bank and Trust ("ASB") argues the bankruptcy court improperly limited the creditors' recovery to the "cash values" of the policies instead of sustaining the objection to the "nonforfeiture values" of the policies. In support of its cross-appeal, ASB refers the court to the language of K.S.A. 40–414(b)(1), which specifically provides that the "nonforfeiture value" of a life insurance policy is not exempt from claims of the creditor if the policy is purchased within one year of the date bankruptcy is filed for the purpose of defrauding creditors. ASB argues the bankruptcy court's ruling is "indisputably contrary to the specific language of the statute." (Cross–Appellee's Brief on Appeal, p. 24.)

ASB reasons that while the statute does not define the term "nonforfeiture value," it does provide in K.S.A. 40–414(a) that that which is *exempt* is the "policy and its reserves, or their present value." The bank thus concludes by implication that that which is *nonexempt* under K.S.A. 40–414(b) must be the same as that which is exempt, i.e., the policy and its reserves.

While it is true that the legislature did not define the term "nonforfeiture value," the court cannot agree that the term includes the policy as well as the cash reserves. Such a meaning would clearly go beyond the generally understood definition of that term. Rather, the court finds that for purposes of this appeal, the term "cash value" is synonymous with the term "nonforfeiture value." Thus, while the bankruptcy court did not utilize the exact term provided in the statute, the outcome is essentially the same and the bankruptcy court's order is affirmed.

IT IS ACCORDINGLY ORDERED this 17 day of March, 1989, that the bankruptcy court's order sustaining the creditors' objections to the exemption of the cash value of challenged life insurance policies is affirmed.